Johnny H. NEIGHBORS, et al., Plaintiffs,

v.

John BLOCK, et al., Defendants.

No. LR–C–82–765.

United States District Court,
E.D. Arkansas, W.D.

March 31, 1983.

Philip E. Kaplan, Karen L. Arndt, Henry L. Hodges, Stephen Engstrom, Little Rock, Ark., for plaintiffs.

Richard M. Pence, Asst. U.S. Atty., Danny Woodyard, USDA Regional Atty., Little Rock, Ark., for defendants.

## EXCERPTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

EISELE, Chief Judge.

### PROCEEDINGS

THE COURT: Good afternoon.

This is one of those days when the Court stops to wonder about its choice of career, but in any event I'm prepared to make my decision and the findings of fact and conclusions that I think are pertinent to that decision. The decision and the opinion will be given from the bench. It is going to be disjointed. It is made up of scribbled notes, typewritten notes, and so forth, but I believe it will set forth my belief as to how the case should be disposed of.

In 1978 the United States Congress, while in the process of drafting new deferral regulations for farm loans in connection with other amendments to the Consolidated Farm and Rural Development Act, enacted 7 U.S.C. Section 1981a. The part of that section which is pertinent here provides:

"In addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made and may forego foreclosure on any such loan upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower."

It should be noted that the Secretary's authority under Section 1981a is in relation solely to monetary considerations—that is, "deferral of principal and interest" and "foregoing foreclosure of any such loan" when the borrower is temporarily unable to make "payments of such principal and interest when due."

The purpose of Section 1981a as stated by its sponsor, Mr. Moore, was "to clarify the Secretary's authority." It was pointed out that language comparable to that found in Section 1981a appears in the Housing Act with respect to housing loans. Mr. Moore added the language, "in addition to any other authority the Secretary may have to defer..." so that the Secretary's authority

under the then-current law "would not be reduced or impaired by the proposed amendment." I am quoting from the House of Representatives Report No. 986 at page 27, U.S.Code Cong. & Admin.News 1978, pp. 1106, 1132.

As discussed in more detail below, without Section 1981a it is unlikely that an administrator would assume he had authority to defer payment or forego foreclosure just because the borrower was temporarily unable to make the required payments without unduly impairing his standard of living. And I emphasize "without unduly impairing his standard of living."

There is an argument as to whether the language of Section 1981a is permissible or mandatory. To this Court, the language is unambiguous and it is permissive. Under such circumstances, it would not be necessary to examine the legislative history. Nevertheless, such an examination reveals the following remarks by Senator Eagleton, and I quote:

"I should note that the original form of my amendment gave the Secretary of Agriculture no discretion in the implementation of the loan deferral program. I have modified my amendment so that this deferral program will be within the Secretary's discretionary authority," unquote.

And, immediately following Senator Eagleton, Senator Allen stated, quote:

"The amendment which the distinguished Senator from Missouri had planned to offer provided that the Secretary shall defer the payment of principal and interest. It seemed to be an amendment that could not be accepted because it required the Secretary to defer payments. The distinguished Senator from Missouri has modified his amendment and has given the Secretary the right to so defer loans and would allow the Secretary to defer payments. With this change, making it discretionary or optional on the part of the Secretary, the Committee will accept the amendment," unquote.

■ As this Court interprets the plain language of Section 1981a, it confers no substantive right on any borrower to have the Secretary defer any payments due or forego foreclosure. It is the Court's view that the statute confers unlimited discretion and no case can be postulated where the refusal to defer or to forego foreclosure would be an abuse of discretion. Since Section 1981a confers no property or liberty rights, as it has been interpreted by the Court, it follows that the plaintiffs are not entitled to the procedural due process provided by the Constitution of the United States. And I cite a case that I cited earlier, *Williams v. Day,* 412 F.Supp. 336, which was in regards to the rights of a teacher under the Arkansas non-tenure provisions.

In determining that Section 1981a does not confer any substantive deferral or loan moratorium rights on borrowers, the Court notes that the Congress has given the Secretary a completely blank check on the exercise of the authority granted to him by that statute. However, the Court supposes that, even in the absence of a mandate from Congress to do so, the Secretary could, if he chose, develop rules and regulations pursuant to which he would exercise the discretion granted in Section 1981a. Those regulations might identify the factors or provide the type of showing that might be required which would warrant deferral, or the foregoing of foreclosure. If the Secretary promulgated such rules and regulations, which made it clear that under certain conditions borrowers would, indeed, be entitled to the favorable exercise of the Secretary's discretion, substantive rights would thereby be created in favor of the affected borrowers and procedural due process would then be required as a constitutional matter with respect to any denial of such relief.

But here the Secretary has not chosen to create any such substantive rights by the promulgation of such rules and regulations, and the Court is of the opinion that he was not required to do so by the United States Constitution. The plaintiffs would have the Court fill in that blank check left blank by the Congress and then enforce it according to those judicially established terms. The Court, although tempted because of the

plight of the plaintiffs in this case, must decline the invitation.

Now having held that the Act gives no substantive rights to the borrowers, it does not follow that it confers no benefit upon borrowers or that it serves no purpose whatsoever.

■ As the Court reads Section 1981a, if a covered borrower requests the Department to defer his payment or forego foreclosure against his property and, in connection therewith, offers to make the showing called for by the statute, that borrower must be given the opportunity to make that showing and, if he succeeds, the Department must in good faith consider his request.

Of course, if the agency has already made a legitimate determination that establishes that the borrower could not in any event qualify for the relief referred to in Section 1981a, then it would not be required to honor such a request. As an example, if the agency, just prior to such a request, had determined that the borrower's inability to make payments of principal and interest when due was not just a "temporary" condition or problem, as required by Section 1981a, then it would be useless and futile to require the agency to go through another administrative proceeding immediately thereafter for the purpose of again making the same factual determination.

Otherwise, the borrower must be given the opportunity to make the showing specified by the statute. Furthermore, the statute permits the request to be made at any time before actual foreclosure. If such request is improperly denied, the borrower, after pursuing any administrative remedy that might be available, could, if he did not prevail in the administrative process, come into court for appropriate injunctive relief. In other words, he would not have to await foreclosure, although it is arguable that he could wait and raise the issue in that proceeding.

Take an example: If a borrower with a good record finds that because of circumstances beyond his control he will temporar-

ily be unable to make his next payment of principal or interest without unduly impairing his standard of living, he can request the relief authorized by Section 1981a and, at the same time, offer to make the showing required by that section. If the Department simply refuses him the opportunity there and throughout any administrative appeals that might be available, he could come into court to mandamus the Secretary to comply with the provisions of Section 1981a and could, most likely, enjoin any adverse action predicated upon his failure to make the questioned payments when due until the Secretary permitted him to make the showing and, if satisfactorily made, until the Secretary had actually considered his request in good faith. It appears obvious that if the borrower makes the necessary showing, the Secretary must not only consider his request in good faith, but must, if he denies same, make some statement of his reasons for such denial.

Or, in the example just given, the borrower, if denied the opportunity to make the showing, might simply wait and, when his loan was foreclosed for non-payment, move that the foreclosure action be dismissed, and that all administrative steps subsequent to the improper denial be abrogated and set aside. In other words, the borrower could ask the court in the foreclosure action to return the parties to square one.

■ The plaintiffs ask the Court to mandate the Secretary and the Department to proceed under Section 1981a as they have, in fact, proceeded under Section 1475 of the Housing Act. They point to the decision in *Curry v. Block,* 541 F.Supp. 506, a 1982 case, in support of their contention. It is true in the *Curry* decision the court went into great detail to make the argument that Congress intended Section 1981a to impose a mandatory duty upon FmHA to implement a deferral program in a similar fashion to that already being implemented pursuant to Section 1475.

The Georgia United States District Court there found that the two statutes contained similar language, shared a similar purpose

and that Section 1981a had, indeed, been modeled after Section 1475. The court then reasoned that the two statutes must therefore be interpreted in the same way. I respectfully disagree.

While the two statutes share some similarities, they are far from identical. First, they apply to drastically different loan schemes. Section 1475, enacted as part of the Housing Act of 1949, included numerous provisions for rural housing. As an adjunct to the rural housing loan programs, the Act included a provision for moratoria upon loan payments. The critical fact is that loans for rural housing are quite different from loans for farm operating expenses, farm land purchases, disaster aid, and so forth, under CFRDA. Although the two provisions could be termed "social welfare" legislation, the loans involved in Section 1981a have a largely business or commercial character. Foreclosure in the context of Section 1475 usually results in the ejectment of a poor or an elderly inhabitant from his home. Foreclosure of CRFDA loans in the context of Section 1981a, as drastic as that action might be, generally forces a farmer out of the farming business, but not necessarily out of his home. I say "generally" and "not necessarily" because the evidence in this case indicates that in some instances the borrowers of CRFDA loans are required to also mortgage their homes as security for such loans.

The two loan schemes have two equally important dissimilarities: size and payment schedules required. The size of an FmHA loan, according to Mr. Dunaway's testimony, is usually around $30,000. The magnitude of farm production loans frequently dwarf that in size. Mr. Dunaway noted that the largest production loan in Arkansas last year was $1.4 million. Thus, the amount of money at stake is much greater under the Section 1981a program than under the Section 1475 program.

The payment schedules also differ dramatically. Whereas the rural housing loans are paid off typically in monthly installments, farm production loans are usually paid in an annual lump-sum payment. De-

ferring a single payment pursuant to Section 1475 would seldom involve a substantial sum of money; deferring a single payment pursuant to Section 1981a, however, could easily involve tens or hundreds of thousands of dollars. Clearly, FmHA has much more at risk and more to lose under the Section 1981a program if the deferral proves to be unwise.

Third, and more importantly, the text of the two statutes varies in several significant respects. Section 1475 provides, quote:

"During any time that any such loan is outstanding, the Secretary is authorized under regulations to be prescribed by him, to grant a moratorium upon the payment of interest and principal on such loan for as long a period as he deems necessary upon a showing by the borrower that due to circumstances beyond his control, he is unable to continue making payments of such principal and interest when due without unduly impairing his standard of living. In cases of extreme hardship under the foregoing circumstances, the Secretary is further authorized to cancel interest due and payable on such loans during the moratorium. Should any foreclosure of such a mortgage securing such a loan upon which a moratorium has been granted occur, no deficiency judgment shall be taken against the mortgagor if he shall have faithfully tried to meet his obligation."

We are already familiar and we have already quoted the language of Section 1981a. The distinctions are obvious. Section 1475 clearly contemplates and requires the Secretary to promulgate regulations carrying out the specifics of the statute. As the statute reads in pertinent part, quote, the Secretary is authorized under regulations to be prescribed by him to grant a moratorium, et cetera. No such language appears in Section 1981a. In fact, the legislative history reveals that Congress considered, yet rejected such language when it enacted Section 1981a. According to the Conference Report on the 1978 Act, the House bill provided language relating to the Secretary's promulgation of regulations to carry out Section 1981a. The Senate ver-

sion had no such language. In Conference the Senate provision prevailed, and I quote from the House Conference Report, 95–1344 of the 95th Congress, Second Session, page 28, quote:

"The House bill authorizes the Secretary of Agriculture, under regulations prescribed by the Secretary, to grant a moratorium upon the payment of interest and principal on any direct or insured loan outstanding under the Act. This authority will be in addition to any authority the Secretary may have under existing law.

"The Senate amendment authorizes the Secretary of Agriculture to permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under the Act, or under the provisions of any other law administered by the Farmers Home Administration.

"The conference substitute adopts the Senate provision." U.S.Code Cong. & Admin.News 1978, p. 1187.

The reason why this distinction is critical is that only under the regulations promulgated by FmHA pursuant to Section 1475 did the requirement for pre-acceleration notice emerge. As noted in *United States v. Rodriguez,* 453 F.Supp. 21, Eastern District of Washington 1978, only the regulations, not the statute—that is not Section 1475— required preacceleration notice. Although the court conceded that notice was required under the regulations, it found, quote, It is true that the statute, Section 1475, does not mandate notice of the availability of moratorium relief to individual borrowers, unquote.

If, as the plaintiffs in the instant action assert, the two statutes—Section 1981a and Section 1475—are to be interpreted in the same way, then it would be true and follow that Section 1981a "does not mandate notice of the availability of moratorium relief to individual borrowers." The only way for such a requirement to arise is through regulations or by constitutional mandate. The FmHA regulations do not provide for specific notice in the context of Section 1981a, and, as pointed out elsewhere in this opin-

ion, because of the Court's interpretation of Section 1981a, there is no constitutional requirement to give such a notice.

A second distinction in the language of the two statutes is that Section 1981a apparently does not require the Secretary to act, except "at the request of the borrower." Thus, the borrower's request is a condition precedent to any action by the FmHA. Noticeably absent from Section 1475 is any language requiring a request before the Secretary's duty to act is triggered. In fact, the House's version of the Section 1981a program lacked the language "at the request of the borrower."

In conference, however, the language which had been in the Senate bill was added. By adding the language, Congress apparently meant to remove any impression that the Secretary was required to automatically consider the deferral option sua sponte. In short, even if as plaintiffs suggest, the language of Section 1475, and not just the applicable regulations, requires automatic consideration of the deferral option by the FmHA, the limiting language of Section 1981a represents a clear departure from that sort of construction.

The parties are here upon a request for preliminary injunctive relief. Under *Dataphase,* a case known to all the parties, the Court must consider four factors in evaluating such a request. The threshold question is whether the plaintiffs have suffered, or will suffer, irreparable harm if the preliminary relief requested is not granted. And the Court must balance the harm to the other party or parties should the relief be given. It must evaluate the plaintiff's likelihood of succeeding upon the merits. And, finally, it must determine if the granting of injunctive relief would serve the public interest.

In *Dataphase Systems, Inc. v. CL Systems, Inc.,* 640 F.2d 109 (8 Cir.1981), the Court pointed out that the likelihood of success would vary depending upon the weight attributed to the other factors. But it can safely be said that in no event could the plaintiff prevail if there was no reason-

able likelihood of his prevailing upon the merits. The Court will focus its attention upon this last-mentioned factor.

After the enactment of the 1978 amendments, the Secretary of Agriculture in August of 1979 issued deferral regulations for farm loans. *See* 7 C.F.R. 1951.33 and 1951.-40. Other regulations issued and implemented by the Secretary are related to the issues at hand because, overall, the regulations and policies of the Department require consideration of deferral and other "service alternatives" in order to avoid foreclosure in all cases. And I want to make a note that in order to avoid foreclosure, the effort to avoid foreclosure appears to be not only a policy but a practice. The Court notes from the testimony that although some 25 percent of the CFRDA loans are delinquent, only about one and a half percent of such loans were being foreclosed in 1982.

And this consideration of such alternatives to foreclosure, including deferral, is given in every case before the decision to accelerate the indebtedness. The Secretary has both explicitly and implicitly dealt with Section 1981a by going beyond its specific requirements and by, in effect, instructing his subordinates to whom he has delegated his authority that borrowers need not make the specific showing set forth in Section 1981a because the Department is going to consider the relief referred to in Section 1981a in the case of every borrower who gets into financial difficulty. In other words, the Secretary has implicitly stated, through the regulations and policies which he has adopted and implemented, that the Department has, in effect, waived the right to require the individual borrowers to make the showing specified in Section 1981a. Clearly, everyone would agree that if the Secretary explicitly and overtly and by written regulation stated such a policy, then these plaintiffs would have no basis to complain.

In other words, if the Secretary issued a regulation that stated: "In every case before deciding to accelerate, the Department shall consider deferral and other means of foregoing foreclosure," could these plaintiff borrowers complain that they were not required to request such relief or to make the showing required by Section 1981a as a condition precedent to the Secretary's consideration of such relief? By the same token, could they complain that they had no notice of the provisions of Section 1981a? The answer obviously is "no."

So borrowers in the situation of plaintiffs here, whose loan statuses have developed into the problem category, automatically get the benefits of Section 1981a without being subjected to its burdens.

There is another reason why these particular plaintiffs are not likely to prevail, and that is because they would not benefit in any way from any order which would direct the Secretary to consider their requests under Section 1981a. The government has adequately demonstrated in the evidence that Mr. Savage, the county committee, and the other FmHA agents involved determined, in the case of each of the named plaintiffs, that their cases were essentially hopeless, that they were financially moribund, and that the inability of each of these borrowers to pay the principal and interest on their outstanding loans was not "temporary" as required by Section 1981a.

Since these administrative determinations are based upon substantial evidence, this Court may not retry such issues, or substitute its view, even if it might have reached a different conclusion upon the same evidence. An administrative determination that the borrowers' inability to pay was not "temporary" would clearly be the basis for a denial of the request for deferral relief under 1981a, and also of a request for an opportunity to make the showing required by that section. Why? Because the law will not require the Department to follow a useless or futile procedure, offering no possibility of success to the borrowers. This is discussed elsewhere in this opinion.

The principal factual basis for the Department's determination that the desperate financial condition of each of these named plaintiffs was not "temporary" arose out of the annual planning procedures pursuant to which the Department, in consulta-

tion with the borrower, develops the facts necessary to determine if the borrower will be eligible for an operating or production loan in the coming crop year. In making such critical determinations with respect to each of the above-named plaintiffs, the Department thoroughly analyzed their factual conditions and determined therefrom that the borrower could not, out of the proceeds of the anticipated crop, or otherwise, realize enough to even repay that particular year's operating loan, much less, that such borrower would have anything of significance left over to reduce other indebtedness.

And, whether right or wrong, the Department in good faith felt that there were other reasons to accelerate certain of the plaintiffs' existing loans—that is, other than their mere inability to make certain payments of principal and interest when due.

Another separate point: The two factors, "circumstances beyond the borrower's control" and the effect upon his "living standard" are stated in Section 1981a as burdens upon the borrowers to prove, to establish their right to have the relief referred to in that section even considered. But those factors are actually considered at the agency's initiative whenever it works out and develops the annual plan for the borrower and goes through the procedures required for determining loan eligibility. So the Secretary's present operating regulations and policies build in considerations of such factors without placing any burden on the borrower.

Does Section 1981a add anything to the Secretary's discretionary authority? I would have to say yes, but only with respect to non-problem cases. But it also puts a duty upon the Secretary to consider deferral of principal and interest and foregoing foreclosure whenever a borrower requests that relief and offers to make the showing specified in that section. The statute could advantageously be used by the person I described in the hypothetical I put to Mr. Dunaway: the wealthy farmer, essentially wealthy, who, because of circumstances beyond his control, is temporarily unable to

make the next payment without unduly impairing his living standard. Ordinarily, this person would not automatically, as is the case with problem debtors, be considered for such relief; and, therefore, absent the statute, no administrator would believe he had authority to even consider such relief in that situation. So the statute would be useful and very important to such relatively well-off borrowers.

Also the statute makes it clear, as I have said, that such relief will have to be considered whenever it is requested and the prescribed showing tendered. So, whereas under current regulations such relief is considered routinely in problem cases just before acceleration, the statute would require such consideration to be given in any case and at any time, within reason, that it is requested. This could be even before financial distress or even after acceleration. And even if a person has already been considered for such relief, he may make another consideration upon request and upon the making of the required showing, assuming there has been enough time between the requests so that the situation can reasonably be considered changed.

■ As the lawyers know, there is a requirement for standing in all cases coming before this court. To satisfy the standing requirement, the plaintiffs must be able to establish that their injury could be remedied by favorable judicial review of the FmHA's action. I cite the case of *Simon v. East Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), case, wherein plaintiffs challenged a revenue ruling from the Department of the Treasury, which, according to the plaintiffs, discouraged hospitals from providing free medical care to indigents. The Court held, however, that there was an insufficient nexus between the proposed judicial solution and the purported response by the hospitals. In essence, the Court found that even if the revenue ruling were struck down, it would not necessarily change the hospitals' policies toward indigents. The Court therefore determined that the plaintiffs lacked standing since

they failed to show that their injury would be redressed by a favorable decision. So here, considering this Court's interpretation of Section 1981a, plaintiffs lack the required standing because they cannot show that their injuries would be addressed by a favorable decision.

Because of the manner in which this Court has interpreted Section 1981a, the Court finds and concludes that there is nothing in the law or the Constitution that requires the defendants, or any of them, to give notice to individual borrowers of the provisions of Section 1981a.

If the Court is wrong in this conclusion—and I do not think that I am—that is, if the law or the Constitution requires notice to be given to individual borrowers, the Court finds that the notice by publication in the Federal Register and by the regulations, policies, and notices presently followed and required are adequate.

Finally, because of the manner in which the defendants have explicitly and implicitly implemented Section 1981a, and because of the procedures followed by the defendants in "problem cases," no notice must be given to borrowers in the position of the plaintiffs here because all such borrowers automatically get the benefit and consideration of the relief alternatives of the statute without even requesting such consideration.

The Government argues that the plaintiffs' claims could be properly raised as a defense to a foreclosure action. If the analogy to Section 1475 is proper, then cases pursuant to that section suggest that the defensive claim remedy is, indeed, available. In *United States v. Trimble,* 86 F.R.D. 435, Southern District of Florida, 1980, the United States sought foreclosure on defendants' home mortgage. The Court held that such compliance with Section 1475, and the notice-of-moratorium-requirement, was a condition precedent to loan foreclosure. Thus, the United States had to allege compliance with regulations before it could proceed with foreclosure. The Court found that "failure of the government to comply with the regulation is a valid defense to a mortgage foreclosure action, and therefore such compliance is not merely a procedural requirement, but is a condition precedent to liability." Since plaintiff did not allege compliance with 7 C.F.R. 1861.10, nor allege generally the performance of conditions precedent, the Court denied the plaintiffs' motion for judgment of foreclosure and dismissed the complaint without prejudice.

Several courts have also noted the propriety of a notice challenge under Section 1475 when raised as a defense to a foreclosure. The *Rodriguez* case I cited above; *United States v. Villanueva,* 453 F.Supp. 17, Eastern District of Washington, 1978.

Again, even if the Court subscribes to the plaintiffs' argument that the two statutes must be interpreted similarly and that pre-acceleration notice is required under both Section 1475 and 1981a—which the Court does not—then the plaintiffs have, as the government contends, an adequate legal remedy. They can raise the *Trimble* defense—I'm referring to *United States v. Trimble*—if the government files a civil action for foreclosure and therefore preliminary injunctive relief is unnecessary.

This is not an appropriate case for class action as the evidence has developed. The varying circumstances of each borrower and each loan under CFRDA, as revealed by the evidence, makes this clear. In addition, for the various reasons set forth in this opinion, each of the named plaintiffs would not be an appropriate representative of, or a member of the same class of borrowers he seeks to represent.

The Court agrees with the government that the plaintiffs have not exhausted their administrative remedies. They have not requested, as they are required to do under Section 1981a, the relief referred to therein. They have not been turned down finally in the administrative process, and this bears, in turn, on their assertion of irreparable injury in connection with their application for preliminary injunction. If one has an adequate remedy administratively or in a court proceeding, preliminary injunctive relief will be denied.

Plaintiffs have both here. They can pursue the issue administratively or attempt to raise it in any foreclosure procedure that might ensue.

The Court disagrees generally with the Georgia case that I have referred to and the Kansas case that has been discussed during the course of the trial but does find sympathy and agreement with the Moskiewicz case. I quote from that case:

Unlike the National Housing Act, the Consolidated Farm and Rural Development Act has no regulations implementing the discretionary authority to provide for loan moratoria that was delegated to the Secretary of Agriculture by Congress when it enacted 7 U.S.C. § 1981a. The language of 1981a is clearly permissive; it does not require the Secretary either to permit loan payment deferral or to promulgate regulations permitting such deferral. Despite plaintiffs' contentions, there appears to be nothing in this statute which entitles them to a deferral of their loan, and in the absence of provisions for such deferrals, obviously there is no duty on the part of anyone to inform plaintiffs of loan deferral opportunities.

Skipping on a little I continue to quote:

"Finally, plaintiffs have no constitutional claim of any merit. They argue that they were denied due process when defendants failed to inform them of their deferral rights. Since there is no apparent basis for their claim that they had such rights, it follows that the failure to inform them of such rights denied them nothing to which they were entitled. In any event, since plaintiffs have not alleged that the defendants did not follow the law in foreclosing on their loan and mortgage, I can assume that there was a foreclosure action and that in the foreclosure action, plaintiffs could have raised this claim as a defense. The foreclosure action provides plaintiffs with the due process to which they are entitled before their property is levied upon and sold.

"Not every procedural defect amounts to a constitutional deprivation of due process. Even assuming that defendants did have a duty to inform plaintiffs of loan deferral opportunities, their failure to do so would not violate plaintiffs' constitutional rights, so long as plaintiffs had an opportunity to raise the procedural defect as a defense in a foreclosure proceeding."

The Court concludes there: "Plaintiffs are making an understandable effort to save their farm from the consequences of several years of bad weather and financial difficulties. It is difficult not to be sympathetic to them and to other farmers in similar situations. However, their efforts here, while valiant, are without legal merit and thus have no chance of success."

The plaintiffs are asking the Court here to require the defendant Secretary of Agriculture to promulgate rules and regulations and require of him that he give notice to borrowers of the provisions of Section 1981a. In so doing, they are asking the Court to require action of the Secretary that the Congress could have, but did not, require. And as I have said, in the light of Congress' awareness of Section 1475 and its provisions requiring regulations and of its knowledge and awareness of those regulations themselves, it must be assumed that the Congress consciously decided that, in contrast to home loans, these commercial-type business-farm loans did not need such regulations or notice.

The entering of a preliminary injunction here as requested would be harmful to the public interest; it would penalize the government; it would be of no benefit to the plaintiffs; and it would not preserve the status quo which, in the context of a deteriorating financial condition, is also inevitably deteriorating. The situation cannot be preserved in status quo essentially.

This little statute that we are dealing with here simply cannot possibly carry the heavy load suggested by the plaintiffs. They need real relief, not the window-dressing which is the essence of 1981a. It is up to the Congress to decide if they get such relief, not the Court.

I have heard the testimony of the parties, and I was particularly impressed and affected by all of it. I recall Mr. Laird talked

about his being burned out and then the tornado gets him out and after all those years he builds back and then some other tragedy comes along. I was sympathetic with Mr. Neighbors when the attorney is asking him, "Why didn't you get into some other business?" His whole life has been in the farming business and someone has the nerve to ask him why doesn't he get into something else. His answer was: "What other business?"

So the frustration is obvious and the need is obvious, but this is the wrong forum for obtaining relief.

On the basis of the Findings of Fact and Conclusions of Law which I have just stated, the Court denies the plaintiffs' application for preliminary injunction, and on the basis of those findings and conclusions the Court determines that the complaint must be dismissed and it will be forthwith.

Court is in recess.