568 F.Supp. 843 (1983)
James H. JACOBY, and Pency S. Jacoby, Plaintiffs,
v.
Charles SCHUMAN, et al., Defendants.
No. N83-0024C.
United States District Court, E.D. Missouri, N.D.
June 14, 1983.
*844 Myron L. Erickson, Columbia, Mo., Dale Reesman, Boonville, Mo., David Lander, St. Louis, Mo., for plaintiffs.
Bruce D. White, Asst. U.S. Atty., St. Louis, Mo., for defendants.

MEMORANDUM
CAHILL, District Judge.
This action was commenced by the plaintiffs seeking injunctive and other relief against the defendants on various grounds. Plaintiffs have alleged that their due process and equal protection rights have been violated, that their rights under 7 U.S.C. § 1981a have been violated, that the foreclosure action instituted by the defendants resulted from a breach of contract, and that the decision by defendant Farmers Home Administration (FmHA) to accelerate plaintiffs' loans was arbitrary and capricious and an abuse of discretion.
Plaintiffs were granted a temporary restraining order on March 11, 1983, and a hearing was held on March 24, 1983. Subsequent to this hearing both parties submitted briefs in support of their position and defendant moved to dismiss plaintiffs' second claim for relief. The Court now makes and enters its Findings of Fact and Conclusions of Law, and enters its judgment for the plaintiffs on their first claim for relief and against the plaintiffs on their second, third, and fourth claims for relief.

Findings of Fact
1. Plaintiffs James H. Jacoby and Pency S. Jacoby are now and at all pertinent times have been residents of Brookfield, Chariton County, Missouri, and are within the jurisdiction of this Court.
2. During early 1981 plaintiffs made a loan application with Farmers Home Administration (FmHA) and were provided with an approval letter in which FmHA promised to loan plaintiffs the sum of $80,640, consisting of disaster loan money, and an operating loan.
3. Based upon this approval letter Linn County State Bank provided plaintiffs with a temporary loan in the amount of $20,000. This loan was in addition to another loan of $20,000 then outstanding. It appears that both loans were to be paid in full upon receipt of the loan money from FmHA.
4. On July 17, 1981, plaintiffs executed Promissory Notes, Deeds of Trust, and Security Agreements, all in the amount of $80,640, to defendant FmHA in a loan closing, whereafter plaintiffs proceeded to the FmHA local office in order to obtain the funds to make the payment to Linn County State Bank.
5. Upon arrival at the FmHA office, plaintiffs were given a check in the amount of $34,000 payable to Linn County State Bank and countersigned by Letha M. Linneman on behalf of FmHA. This $34,000 was a part of $60,000 which was placed into a supervised account by the FmHA.
6. This amount of about $60,000 was all that was ordered in by County Supervisor Hardwick. It appears that it was normal procedure for the County Supervisor to not forward the total amount of a loan based upon the determination that only a certain amount was needed at that time. The purported rationale is that if the entire amount were forwarded the borrower would have to pay interest on the total amount received even though it was not then used. Usually, the County Supervisor works with the borrower in determining whether all funds are to be forwarded, and if not how much is to be forwarded. This was not done here.
7. The plaintiffs were unaware that the entire $80,640 was not immediately forthcoming.
8. Mrs. Jacoby delivered the check to the named payee, Linn County State Bank, to the attention of Vice President Eric Smith, who was not present at that time.
*845 9. The normal practice at Linn County State Bank is that if the check is payable to a customer it is placed in the customer's account. If the check is payable on a loan and made payable to the bank, as in this case, the check is applied to the loan balance.
10. Although the named payee on the check was Linn County State Bank, the check was deposited directly to the personal account of plaintiffs. It appears that this was done without plaintiffs' knowledge or consent.
11. Linn County State Bank made several charges against these deposited funds without plaintiffs' knowledge, agreement, or consent. On or about July 23, 1981, the bank, without the knowledge or consent of plaintiffs, took from this account the sum of $20,316.72, and applied this amount against plaintiffs' indebtedness to the bank.
12. The plaintiffs did not learn of these funds being placed in their personal account until the receipt of their August bank statement. The plaintiffs wrote other checks on this account without additional outside funds to cover them. These checks were for operating and living expenses.
13. Throughout early August, 1981, the plaintiffs made purchases and paid bills which were reimbursed from the supervised account. At no time did County Supervisor Hardwick indicate displeasure with the transactions to date. The plaintiffs repeatedly requested the remainder of the funds, and County Supervisor Hardwick informed them that the funds would be forthcoming.
14. On or about August 20, 1981, the plaintiffs received a letter from County Supervisor Hardwick charging them with fraudulent misrepresentation by putting money in their personal account. Hardwick stated in this letter that because of this fraudulent misrepresentation the remainder of the loan, $20,570, was cancelled. Hardwick made no contact with the plaintiffs concerning the spending of these funds and made no inquiry of them prior to the cancellation of the remaining loan amount.
15. In late December 1981 or January 1982 plaintiffs sold some hogs upon which FmHA had liens. These liens were subordinate to liens of feed providers. Allegedly the proceeds of this sale were used to pay feed bills and operating expenses.
16. By letter dated March 5, 1982, Hardwick informed the plaintiffs that unless the matter with Linn County State Bank was resolved the FmHA could not continue with their present loans. The letter stated that if the matter with the bank was resolved Hardwick would review plaintiffs' projected 1982 farm plan to determine if FmHA could continue. The letter stated their alternatives as voluntarily liquidating their machinery, selling their real estate, conveying their real estate to the Government for the debts against it, or facing liquidation by the bank, the prior lienholder, and the FmHA. The plaintiffs were not advised of alternatives to voluntary loan liquidation.
17. All of plaintiffs' security was tied up by the bank or FmHA, and plaintiffs could not secure other credit. Without the remaining $20,570 of the FmHA loan the plaintiffs were unable to work out their problems with the bank.
18. By letter dated April 6, 1982, State Director John O. Foster informed the plaintiffs of the acceleration of their debt to the FmHA. The letter stated that this acceleration was due to the plaintiffs' default by failure to pay installments of principal and interest when due, permitting the same to become delinquent, and their alleged disposal of property covered by the security agreement without the consent of the Government. The letter informed the plaintiffs that unless full payment of their indebtedness was received on or before May 6, 1982, the United States would take foreclosure action.
19. The plaintiffs unsuccessfully exhausted their administrative remedies regarding this foreclosure action.
20. The plaintiffs were informed by a letter dated February 15, 1983, that the FmHA intended to hold a trustee's sale of their property on March 14, 1983.

*846 Conclusions of Law

1. This Court has jurisdiction under the provisions of 28 U.S.C. § 1331, and The Administrative Procedure Act, 5 U.S.C. §§ 702, 706(2)(A).
2. The Court does not have jurisdiction over plaintiffs' second claim for relief for the reason that exclusive jurisdiction to hear any claim against the United States founded upon contract and seeking more than $10,000 rests exclusively with the Claims Court pursuant to the provisions of 28 U.S.C. § 1491. Plaintiffs' second claim for relief requests this Court to order defendant FmHA to fulfill its contractual obligation to plaintiffs and provide the additional sum of $20,570 as designated in the promissory notes, deeds of trust, and security agreements executed by plaintiffs and accepted by FmHA. Accordingly, plaintiffs' second claim for relief is dismissed.
3. The Claims Court's exclusive jurisdiction over monetary damages exceeding $10,000 does not deprive a federal district court of jurisdiction over all equitable claims asserted in a complaint. Giordano v. Roudebush, 617 F.2d 511, 514 (8th Cir.1980).
4. The Secretary of Agriculture, who delegates the administration of loans to the FmHA, was given the discretionary power to defer payments on principal and interest by 7 U.S.C. § 1981a. This discretionary power commences "upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower."
5. Defendant violated 7 U.S.C. § 1981a by failing to provide plaintiffs with notice of its provisions and an opportunity to be heard. The district courts in Curry v. Block, 541 F.Supp. 506 (S.D.Ga.1982), and Allison v. Block, 556 F.Supp. 400 (W.D.Mo. 1982), conducted detailed analyses and comprehensive reviews of the legislative history of § 1981a and of the statutory framework surrounding it. This Court can add nothing to those well-reasoned discussions. It is this Court's determination, in line with the above-mentioned cases, that the statute requires the Secretary to provide borrowers notice of § 1981a, to provide an opportunity to show their eligibility for the relief it provides, and to determine whether borrowers should be granted a loan deferral.
6. The purpose of the statute cannot be achieved unless borrowers are informed of its provisions. Allison v. Block, 556 F.Supp. at 405.
7. "The Secretary's decision to grant or deny a deferral under § 1981a commences only after a borrower has shown that he meets the requirements set out in the statute: a temporary inability to pay because of circumstances beyond his control without unduly impairing his standard of living." Allison v. Block, 556 F.Supp. at 406.
8. When discretion is vested in an administrative agency, the refusal to exercise that discretion is itself an abuse of discretion. Matzke v. Block, 542 F.Supp. 1107, 1115 (D.Kan.1982).
9. Defendant abused its discretion by failing to fully consider the applicability of 7 U.S.C. § 1981a's loan deferral relief. The record does not reflect that any consideration was ever given to circumstances beyond plaintiffs' control. The plaintiffs testified that their default was caused by the FmHA's cancellation of the remaining $20,570 of the loan amount which in turn was caused by Linn County State Bank's placing FmHA funds in plaintiffs' personal account. If the plaintiffs did not authorize this deposit it may well have been beyond their control. Further, the record does not reflect that any consideration was ever given to the effect upon plaintiffs' standard of living of having to make payments when due. Therefore, it appears the decision to foreclose was not based on consideration of the relevant factors.
10. Courts must hold unlawful agency actions which are an abuse of discretion. 5 U.S.C. § 706(2)(A); Allison v. Block, 556 F.Supp. at 404.

*847 Opinion

The FmHA, an agency within the Department of Agriculture, provides credit to rural residents unable to obtain credit from other sources at reasonable rates and terms. Federal farm loan assistance programs, such as those administered by the FmHA, are directed toward the benefit of the farmer and toward the ultimate welfare of society. The purpose of the program is described in Congressional reports accompanying the Agricultural Credit Act of 1978, Pub.L. No. 95-334, 92 Stat. 427: "Historically, the primary mission of the Farmers Home Administration has been to help farmers with limited resources become successfully established in agriculture. It also assists farmers with loans to keep them in business by refinancing, restructuring debts, and recouping losses caused by disasters." 1978 U.S.Cong. & Ad.News, 1106, 1127. The purpose of economic emergency loans, such as received by the plaintiffs, is to enable farmers or ranchers to continue operating during economic stress caused by the unfavorable relationship between production costs and prices received for agricultural commodities. 7 C.F.R. § 1945.102 (1980).
With this avowed purpose in mind, the Court believes the analyses in Curry, Matzke, and Allison more correctly state the requirements of 7 U.S.C. § 1981a than those cases cited by defendant, which hold that no notice or opportunity to be heard is required under § 1981a. See Moskiewicz v. Block, No. 82-C-231 (W.D.Wis., Sept. 10, 1981); U.S. v. Hamrick, No. 82-608-3 (D.S.C., Nov. 15, 1982); Rowell v. Secretary of Agriculture, No. 82-181-5 (M.D.La., Dec. 6, 1982); Neighbors v. Block, 564 F.Supp. 1075 (E.D.Ark., 1982); and Ramey v. Block, Civ. 3-82-557 (E.D.Tenn., Jan. 20, 1983).
It appears to the Court that the problem in this case arose when the plaintiffs were not advanced the total amount which had been approved. Although this may be normal procedure, the plaintiffs were not in this instance informed that they would not be getting the total amount approved. The plaintiffs understandably incurred debts in anticipation of a certain amount being forwarded. But for this lesser amount being forwarded, plaintiffs would probably not be in the predicament they are today. Furthermore, even with this lesser amount, it appears that but for the bank placing a check made payable to the bank in plaintiffs' personal account they may have been able to work their way out of this predicament.
The Court does not mean to imply that the plaintiffs could have done nothing to alleviate this situation. Indeed, certain actions by the plaintiffs only aggravated the situation. Allegedly the plaintiffs sold livestock secured by the Government without authorization. However, the Government's security interest was subordinated to the feed providers who were allegedly paid from the proceeds of the sale. It is also alleged that the plaintiffs received insurance payments which should have been forwarded to the Government. However, using 7 U.S.C. § 1981a as a guide, it does not appear that plaintiffs' could have forwarded this money to the Government "without unduly impairing [their] standard of living."
In addition to injunctive relief from foreclosure and an order that FmHA fulfill its contractual obligation, the plaintiffs have asked this Court to issue an order permitting them to apply for emergency funds for which they are qualified. Plaintiffs wish to receive an objective, impartial consideration of their application. The plaintiffs also seek injunctive relief against defendants engaging in any further acts of abuse or harassment. The testimony and documents in evidence do not reveal the need for such orders. The plaintiffs were never informed that they could not apply for additional relief. They were told, however, that additional funds would not in all probability be forthcoming because of their default status. Further, although the plaintiffs and the County Supervisor appear to have not had a good working relationship and that relationship is further strained by this suit, there is nothing in the record which indicates that the defendants have intentionally harassed or intend to harass the plaintiffs.
*848 Accordingly, for the reasons stated, plaintiffs' first claim for relief is granted, plaintiffs' second claim for relief is dismissed, and plaintiffs' third and fourth claims for relief are denied. The defendants are hereby enjoined from foreclosing on the plaintiffs' farm until such time as the necessary compliance with 7 U.S.C. § 1981a as outlined in Allison v. Block, 556 F.Supp. 400 (W.D.Mo.1982), is made. That is, until such time as FmHA has promulgated regulations implementing § 1981a, particularly regulations providing for notice, opportunity to be heard, and criteria for qualifications for the deferral.