Rex RAMEY, et al.,
Plaintiffs-Appellants,

v.

John BLOCK, Secretary of Department of Agriculture, et al.,
Defendants-Appellees.

No. 83–5167.

United States Court of Appeals,
Sixth Circuit.

Argued March 27, 1984.

Decided July 11, 1984.

Will Dunn (argued), Dayton, Tenn., for plaintiffs-appellants.

John W. Gill, Jr., U.S. Atty., J. Michael Haynes (argued), Asst. U.S. Atty., Knoxville, Tenn., for defendants-appellees.

Before JONES and CONTIE, Circuit Judges, and CHURCHILL, District Judge.*

---

* Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation.

CONTIE, Circuit Judge.

The Secretary of Agriculture (Secretary) is authorized under the Consolidated Farm and Rural Development Act (CFRDA), 7 U.S.C. §§ 1921–1996, to make loans to farmers who are "unable to obtain sufficient credit elsewhere to finance [their] actual needs at reasonable rates and terms." 7 U.S.C. § 1983(a). The recipients of CFRDA loans are personally liable for the obligation and must provide such security as the Secretary may require. 7 U.S.C. §§ 1927(c), 1946(a)(1), and 1964(d). This appeal represents significant questions regarding the extent to which the Secretary must implement 7 U.S.C. § 1981a, the CFRDA's loan moratorium provision. The district court adopted the position that the Secretary is under no obligation to implement § 1981a. We reverse.

### I.

Plaintiffs Rex and Tex Ramey are dairy farmers in Roane County, Tennessee. In November 1965, they obtained the first of a series of CFRDA loans from the Farmers Home Administration (FmHA).[1] Several of these loans were secured by real estate and other chattel property owned by the plaintiffs. These security interests were held by the Federal Land Bank of Louisville, Kentucky and the FmHA. Thereafter, the plaintiffs suffered a series of economic setbacks due to drought and low market prices. When the plaintiffs failed to make their scheduled payments on several loans, the Federal Land Bank commenced foreclosure proceedings on a portion of plaintiffs' farm. The FmHA, in an effort to protect its junior lien interest, purchased the property for $292,000.00. On November 16, 1981, the FmHA notified the plaintiffs that it was accelerating their loan accounts due to (1) their failure to make scheduled note payments, (2) their failure to pay scheduled taxes, and (3) their unauthorized disposition of secured property. The notice also stated

---

1. The Secretary of Agriculture has delegated the authority to administer the CFRDA to the Farmers Home Administration. *See* 7 C.F.R. §§ 2.23, 2.70.

that the FmHA would commence foreclosure proceedings on the aforementioned property if full payment was not received by December 8, 1981. The plaintiffs appealed pursuant to FmHA regulations, but the decision was ultimately upheld.

Prior to the foreclosure sale, the plaintiffs learned of the loan deferral provisions set forth in 7 U.S.C. § 1981a from sources other than the FmHA. Section 1981a provides as follows:

> In addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this chapter, or under the provisions of any other law administered by the Farmers Home Administration, and may forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower. The Secretary may permit interest that accrues during the deferral period on any loan deferred under this section to bear no interest during or after such period: *Provided,* That if the security instrument securing such loan is foreclosed such interest as is included in the purchase price at such foreclosure shall become part of the principal and draw interest from the date of foreclosure at the rate prescribed by law.

On September 21, 1982, the plaintiffs initiated this lawsuit. The plaintiffs alleged, *inter alia,* that the Secretary had abused his discretion by failing to implement § 1981a through the promulgation of "adequate loan servicing regulations." The plaintiffs also contended that the Secretary had a duty to inform them of the deferral provisions prior to the acceleration of their loans. The plaintiffs sought (1) a declaratory judgment that the Secretary had a duty to promulgate regulations to implement § 1981a, and (2) an injunction to stop the foreclosure sale until the plaintiffs had the opportunity to apply for deferral relief pursuant to those regulations. On September 28, 1982, the district court entered an order which enjoined the foreclosure sale pending the final disposition of this case. Thereafter, both parties filed motions for summary judgment and agreed to a limited stipulation of facts. On January 20, 1983, the district court granted the Secretary's summary judgment motion after ruling that "the legislative history of the 1978 amendments indicates that the Secretary would have discretion under the Act in the implementation of the loan deferral program." Plaintiffs appeal.

## II.

The starting point in a search for legislative intent is, of course, the pertinent statutory language. *Reiter v. Sonotone Corp.,* 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979); *Piper v. Chris-Craft Industries,* 430 U.S. 1, 24, 97 S.Ct. 926, 940, 51 L.Ed.2d 124 (1977). Section 1981a contains no provision for the promulgations of regulations by the Secretary and no notice requirement. It does, however, contain general standards for deferral relief which limit the scope of the Secretary's discretionary authority. Since the text of § 1981a does not clearly and unequivocally resolve the issue of whether the Secretary must implement the statute, we must examine the legislative history in order to ascertain and give effect to the legislative will. *See Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). As we embark upon this venture, we are guided by Chief Justice Burger's admonition in *Piper* that "[r]eliance on legislative history in divining the intent of Congress is, as has often been observed, a step to be taken cautiously." *Piper v. Chris-Craft Industries,* 430 U.S. at 26, 97 S.Ct. at 941.

Section 1981a was enacted as part of the Agricultural Credit Act of 1978, Pub.L. No. 95–334, *reprinted in* 1978 U.S.Code Cong.

& Ad.News (92 Stat.) 420–434, which amended the CFRDA. The House version of the statute contained a reference to the creation of regulations by the Secretary and also contained general standards for deferral relief:

> SEC. 331A. In addition to any authority under existing law which the Secretary may have, during any time that any direct or insured loan is outstanding under this title, the Secretary is authorized *under regulations prescribed by him* to grant a moratorium upon the payment of interest and principal on such loan for so long a period as he deems necessary, *upon a showing by the borrower that due to circumstances beyond his control, he is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower.* The Secretary is also authorized to forego foreclosure on loans made under this title under circumstances set forth in this section. [Emphasis added].

H.R.Rep. No. 986, 95th Cong., 2d Sess. 79. The House Report also contains the following summary of the proposed statute:

> In another amendment to title I, Mr. Moore proposed that the Secretary should have explicit authority to provide a moratorium on payment of principal and interest and to forego foreclosure on Farmers Home Administration loans, upon a showing by the borrower that due to circumstances beyond his control he was temporarily unable to meet an installment when due without unduly impairing his standard of living. Comparable language appears in the Housing Act with respect to housing loans by the Farmers Home Administration and was recommended by Mr. Moore in order to clarify the Secretary's authority. The amendment was accepted by the committee with a change offered by Mr. Moore to provide that this would be in addition to any authority the Secretary may have under existing law, so that the Secretary's authority under current law would not be reduced or impaired by the proposed amendment.

H.R.Rep. No. 986, 95th Cong., 2d Sess. 27, *reprinted in* 1978 U.S.Code Cong. & Ad. News 1106, 1132.

The House Report's allusion to "comparable language" is a reference to 42 U.S.C. § 1475, the moratorium provision in Title V of the Housing Act of 1949, 42 U.S.C. §§ 1471–1490j. Section 1475 also authorizes the Secretary "under regulations to be prescribed by him" to defer payment of principal and interest "upon a showing by the borrower that due to circumstances beyond his control, he is unable to continue making payments of such principal and interest when due without unduly impairing his standard of living." It is clear, therefore, that the House version of § 1981a provided for the statute's implementation through the promulgation of regulations by the Secretary.

The Senate version of § 1981a was introduced on the Senate floor by Senator Thomas Eagleton and read as follows:

> Sec. 331A. In any area eligible for emergency loans under subtitle C [7 U.S.C. §§ 1961–1971], the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this title, or under the provisions of any other law administered by the Farmers Home Administration, for not to exceed three years from the date of such deferral. The interest which accrues during the deferral period on any loan deferred under authority of this section shall bear no interest during or after such period; provided, however, if the security instrument securing such loan is foreclosed such interest as is included in the purchase price at such foreclosure shall become a part of the principal and shall draw interest from the date of foreclosure at the rate prescribed by law.

124 Cong.Rec. S12134 (daily ed. May 2, 1978).

Unlike the House version, the Senate version contained no reference to the creation

of regulations by the Secretary, and contained no general standards for deferral relief which would serve to limit the Secretary's discretion. These omissions, coupled with the use of the word "may" in the statute, strongly suggest that the Senate only intended to empower the Secretary to implement, at his discretion, the loan deferral statute. *Cf. Rank v. Nimmo*, 677 F.2d 692, 699–701 (9th Cir.), *cert. denied*, 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982) (Congress' use of word "may" in assignment-refund section of Veterans Administration Act, coupled with the absence of general standards for relief, indicated Congress intended to leave implementation decision to agency's discretion). This conclusion is buttressed by the following remarks of Senator Eagleton, the amendment's sponsor:

> I should note that *the original form of my amendment gave the Secretary of Agriculture no discretion in the implementation of the loan deferral program.* However, as the result of the personal assurance I have received from the Secretary of Agriculture that the loan deferral program will be carried out without interest being charged on interest, *I have modified my amendment so that this deferral program will be within the Secretary's discretionary authority.* I hasten to add, however, that the prohibition on the charging of interest on interest remains mandatory for this program. [Emphasis added].

**2.** Following the enactment of § 1981a, the Secretary issued payment deferral regulations for farm loans. *See* 7 C.F.R. §§ 1951.33(e), 1951.-40(b)(2). We agree with the Eighth Circuit, however, that these regulations "appear[ ] as more of an afterthought than an earnest attempt to comply with the specific mandates of section 1981a." *Allison v. Block*, 723 F.2d 631, 636 (8th Cir.1983).

**3.** The Secretary also argues that this court need not address plaintiffs' § 1981a claim because the Secretary's implementation of § 1981a would not cancel the defaults and accompanying foreclosure sale in this particular case. The Secretary points out that the acceleration of each of plaintiffs' loans was based upon plaintiffs' unauthorized disposition of collateral as well as nonpayment. Since § 1981a applies only to defaults by reason of nonpayment, the

124 Cong.Rec. S12133 (daily ed. May 2, 1978) (statement of Sen. Eagleton).

The Conference Committee omitted the House version's "under regulations prescribed by [the Secretary]" provision from the final version of the statute, and retained the Senate version's requirement that the borrower must make an initial request for deferral relief. H.R.Rep. No. 1344, 95th Cong., 2d Sess. 28, *reprinted in* 1978 U.S.Code Cong. & Ad.News 1106, 1187. The Committee also, however, adopted the general standards for deferral relief which were included in the House version, but were conspicuously absent from the Senate version. *Id.* Accordingly, the final version of § 1981a contained no provision for the promulgation of regulations by the Secretary, but did contain general standards for deferral relief which limit the scope of the Secretary's discretionary authority.[2]

### III.

Having examined the legislative history of § 1981a, we first consider the Secretary's argument that it has no duty to implement § 1981a or to notify farmers of the deferral statute.[3] Such a result is warranted, the Secretary explains, because the language of § 1981a is permissive rather than mandatory in nature. Under this interpretation, Congress has merely empowered the Secretary to implement, at his discretion, the loan deferral program. *See*

receipt by the plaintiffs of deferral relief under § 1981a would not remove the defaults arising from the unauthorized sales.

We disagree. The record contains no finding that the plaintiffs did in fact dispose of loan collateral. Even assuming that the plaintiffs did dispose of loan collateral, the record does not indicate what collateral was sold. Since the security agreements at issue list several different types of collateral, we are unable to determine which agreements were breached due to the unauthorized sale. Accordingly, we cannot conclude that the acceleration of each of plaintiffs' loans was due to plaintiffs' unauthorized disposition of loan collateral. In light of this lack of evidence regarding plaintiffs' unauthorized sale of collateral, we are in fact obligated to address the § 1981a issue.

*Neighbors v. Block,* 564 F.Supp. 1075, 1077–78 (E.D.Ark.1983); *Moskiewicz v. Block,* No. 82–C–231 (W.D.Wisc. January 17, 1983); *United States v. Markgraf,* No. 81–C–1448 (E.D.Wisc. July 5, 1983).

█ Although the construction put on a statute by the agency charged with its administration is entitled to a degree of deference, it is the courts which are the final authorities on issues of statutory construction. *FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 31–32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981). In this case, we believe the Secretary reads § 1981a's "permissive" language much too broadly. The discretion granted the Secretary under § 1981a concerns the decision to grant or deny deferral relief. The Secretary cannot, however, refuse to exercise this discretion by simply ignoring requests for deferral relief. *See Accardi v. Shaughnessy,* 347 U.S. 260, 266–268, 74 S.Ct. 499, 502–504, 98 L.Ed. 681 (1954). The statute provides that the Secretary must exercise his discretion "at the request of the borrower" and *"upon a showing* by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower." 7 U.S.C. § 1981a (emphasis added). The requirement of a showing of eligibility for deferral relief is necessarily premised upon the existence of a procedure for the borrower to make the requisite showing. *Allison v. Block,* 723 F.2d 631, 634 (8th Cir. 1983). We therefore hold that a CFRDA borrower who requests deferral relief must be given the opportunity to demonstrate his or her eligibility for such relief. *Allison v. Block,* 723 F.2d at 634–36; *Jacoby v. Schuman,* 568 F.Supp. 843, 846 (E.D.Mo. 1983); *Matzke v. Block,* 564 F.Supp. 1157, 1168 (D.Kan.1983); *Coleman v. Block,* 562 F.Supp. 1353, 1361–62 (D.N.D.1983); *Curry v. Block,* 541 F.Supp. 506, 522 (S.D.Ga. 1982). Following this showing by the borrower, the Secretary must in good faith consider the borrower's request. *Neighbors v. Block,* 564 F.Supp. at 1078; *Cole-*

*man v. Block,* 562 F.Supp. at 1361. While we do not attempt to set forth the procedure which the Secretary should follow for reviewing deferral requests, we hold that the Secretary must produce a written decision which clearly sets forth the reasons for the decision in order to facilitate judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 701–706. *Matzke v. Block,* 564 F.Supp. at 1167; *Coleman v. Block,* 562 F.Supp. at 1362.

█ We also hold that the Secretary must further specify the standards for deferral relief set forth in § 1981a. The statute requires an applicant for deferral relief to demonstrate that: (1) he cannot make payments of principal and interest when due without unduly impairing his standard of living; (2) he cannot make the payments due to reasons beyond his control; and (3) his inability to make payments is temporary. Although these standards clearly indicate that Congress did not leave the decision of whether to grant deferral relief to the unfettered discretion of the Secretary, the standards do not give an applicant adequate notice of what he must prove in order to qualify for deferral relief. For example, the applicant is not told how living standards are determined, or how severe the impairment must be. Moreover, the applicant is not told what constitutes a reason beyond one's control, or how long a temporary inability to pay can last. We believe that Congress intended to limit the Secretary's discretion through the creation of meaningful standards which, if met, would entitle the applicant to relief. Accordingly, we hold that some further specification of the existing standards for deferral relief is necessary. *See Allison v. Block,* 723 F.2d at 636–38; *Coleman v. Block,* 562 F.Supp. at 1362.

The plaintiffs contend that the Secretary must develop these new standards through the promulgation of regulations. In advancing this argument, the plaintiffs rely almost exclusively upon *Curry v. Block,* 541 F.Supp. 506 (S.D.Ga.1982), which held, *inter alia,* that the FmHA has a mandato-

ry duty under § 1981a to promulgate regulations similar to the regulations used to implement 42 U.S.C. § 1475, the Housing Act's moratorium provision. The *Curry* court grounded its decision upon the statement in H.R.Rep. No. 986 that the House version of § 1981a had "comparable language" to that used in § 1475. *Id.* at 517. Such comparable language, the court explained, "when coupled with the rules of statutory construction providing that similar language should be given similar treatment and that legislators are deemed to be aware of the existing law on the subject," indicated a congressional intent to have the loan deferral programs implemented in the same fashion. *Id.* at 518.

The texts of § 1981a and § 1475 are quite comparable, with one notable exception. Section 1475 explicitly states that "the Secretary is authorized *under regulations to be prescribed by him* to grant a moratorium upon the payment of interest and principal." (emphasis added). Section 1981a, on the other hand, makes no mention of regulations. Moreover, § 1981a's legislative history reveals that the Conference Committee considered and later deleted a clause from the House version which provided for the promulgation of regulations by the Secretary. *See* H.R.Rep. No. 1344, 95th Cong., 2d Sess. 28, *reprinted in* 1978 U.S.Code Cong. & Ad.News 1106, 1187. Such congressional action "strongly militates against a judgment that Congress intended a result that it expressly declined to enact." *Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 200, 95 S.Ct. 392, 401, 42 L.Ed.2d 378 (1974). We therefore hold that the Secretary is not required to promulgate regulations, but rather may develop the new standards either by regulation or by case-by-case adjudication. *See Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council,* 435 U.S. 519, 543–44, 98 S.Ct. 1197, 1211–1212, 55 L.Ed.2d 460 (1978); *Allison v. Block,* 723 F.2d at 638. Regardless of which method is chosen, however, the Secretary must generate specific standards for deferral relief and apply them in uniform fashion. "No matter how rational or consistent with

congressional intent a particular decision might be, the determination of eligibility cannot be made on an *ad hoc* basis by the dispenser of the funds." *Morton v. Ruiz,* 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974).

■ Although we have concluded that the Secretary must (1) create a procedure under which borrowers who have requested deferral relief can establish their eligibility for relief, (2) consider in good faith the borrower's offer of proof, (3) produce a written decision which clearly sets forth the Secretary's reasoning, and (4) further specify the general standards for deferral relief incorporated within § 1981a, we find nothing in the text of § 1981a or its legislative history which requires the Secretary to formally notify the borrower that deferral relief is available. *See Matzke v. Block,* 564 F.Supp. 1157, 1166–67 (D.Kan.1983). The statute does not require the Secretary to act except "at the request of the borrower." By adding this clause, Congress has indicated that the Secretary is not required to consider the deferral option *sua sponte* when dealing with a borrower who is in default. We acknowledge that several courts have held that the Secretary must give actual notice to borrowers based upon notions of basic fairness. *See Allison v. Block,* 723 F.2d at 634–35; *Jacoby v. Schuman,* 568 F.Supp. at 846; *Coleman v. Block,* 562 F.Supp. at 1361; *Curry v. Block,* 541 F.Supp. at 522. We must, however, "be wary against interpolating our notions of policy in the interstices of legislative provisions." *Scripps-Howard Radio v. FCC,* 316 U.S. 4, 11, 62 S.Ct. 875, 880, 86 L.Ed. 1229 (1942). Since Congress has declined to create a notice requirement, we now decline to substitute "our notions of policy" for that of Congress.

## IV.

Based upon the text of § 1981a, its legislative history, and the applicable case law, we conclude that the Secretary has abused his discretion by failing to exercise the discretion granted to him under § 1981a.

While the Secretary is not required to notify CFRDA borrowers of the deferral provisions set forth in § 1981a, the Secretary must accept requests for deferral relief and must establish a procedure for borrowers to demonstrate their eligibility for such relief. Moreover, the Secretary must further specify the general standards for deferral relief in § 1981a through the promulgation of regulations or through case-by-case adjudication. We therefore RE-VERSE the district court judgment and AFFIRM the injunction on the foreclosure of the Rameys' farm pending the Secretary's compliance with this decision.

NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority's decision to reverse the judgment of the district court, since the Secretary has a duty to implement 7 U.S.C. § 1981a. I dissent from that portion of the majority opinion which holds that the Secretary has no duty to notify farmers of the deferral statute. In my view, the majority has misconstrued the legislative intent behind § 1981a.

The legislative intent as evidenced by Congress' knowledge of existing law on the subject and the plain meaning of § 1981a reveals that personal notice is required. For example, as was noted in *Curry v. Block*, 541 F.Supp. 506, 523 (S.D.Ga.1982) it is reasonable to conclude that Congress intended § 1981a to provide covered borrowers with personal notice, since "Congress knew that in enacting § 1981a it was using 'comparable language' to that found in the Rural Housing Act," *id.* (citation omitted), which provides for personal notice. Consequently, in using such comparable language Congress provided for personal notice under § 1981a.

Congressional knowledge of the Rural Housing Act aside, it is clear from § 1981a's plain meaning that Congress intended to provide personal notice. For example,

[T]he language of the statute expressly provides that the deferral mechanism is triggered "at the request of the borrow-er." Further, no deferral relief will be forthcoming absent "a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower." 7 U.S.C. § 1981a (emphasis added). Logically, the borrower is unable to request the deferral relief and show his eligibility to receive the same unless he has notice of the contents of § 1981a and an opportunity to be heard.

*Id.* at 522.

For the foregoing reasons, I respectfully dissent from that portion of the majority opinion which holds that the Secretary has no duty to personally notify farmers under 7 U.S.C. § 1981a.