Inez **CURRY** and Remer Curry, et al., Plaintiffs-Appellees,

v.

John R. **BLOCK**, etc., et al., Defendants-Appellants.

James McLeod **ROWELL**, Plaintiff-Appellant,

v.

**SECRETARY OF AGRICULTURE**, et al., Defendants-Appellees.

Nos. 82–8544, 83–7147.

United States Court of Appeals, Eleventh Circuit.

Aug. 15, 1984.

Ray Fullerton, U.S. Dept. of Agriculture, Washington, D.C., for defendants-appellants in 82–8544.

Martha A. Miller, Atlanta, Ga., for plaintiffs-appellees in 82–8544.

Catharine F. Haukedahl, Asst. Atty. Gen., St. Paul, Minn., for amicus curiae, State of Minnesota.

Allen J. Barkin, Legal Services Corp. of Alabama, Bay Minette, Ala., for plaintiff-appellant in 83–7147.

D. Broward Segrest, Asst. U.S. Atty., John C. Bell, U.S. Atty., Montgomery, Ala., for defendants-appellees in 83–7147.

Before RONEY, FAY and CLARK, Circuit Judges.

CLARK, Circuit Judge:

These consolidated appeals involve actions brought by borrowers who have defaulted on loans granted under the Consolidated Farm and Rural Development Act (CFRDA), 7 U.S.C. § 1921 *et seq.* (1982). These borrowers challenge the Farmers Home Administration's (FmHA) implementation of loan servicing and foreclosure avoidance mechanisms contained in 7 U.S.C. § 1981a.[1] Section 1981a provides:

> In addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this chapter, or under the provisions of any other law administered by the Farmers Home Administration, and may forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower. The Secretary may permit interest that accrues during the deferral period on any

---

1. A third case heard by this panel, *Johnson v. United States Department of Agriculture,* 734 F.2d 774 (11th Cir.1984), challenged the FmHA's lending procedures under the Rural Housing Loan Program of Section 502, Title V of the Housing Act of 1949, 42 U.S.C. § 1472 (1980). Although portions of this opinion address the Rural Housing Act, such references are for purposes of analogy only; only in the *Johnson* case are the Rural Housing Act procedures at issue.

loan deferred under this section to bear no interest during or after such period: *Provided,* That if the security instrument securing such loan is foreclosed such interest as is included in the purchase price at such foreclosure shall become part of the principal and draw interest from the date of foreclosure at the rate prescribed by law.

7 U.S.C. § 1981a (1982). The borrowers' challenge to the FmHA's implementation of § 1981a can be summarized as follows. First, they contend that § 1981a requires the FmHA to establish uniform administrative procedures: the FmHA must give borrowers personal notice of their right to apply for deferral relief[2] and establish a procedural framework which would afford borrowers a hearing in which they could show their entitlement to relief. Second, the borrowers contend that § 1981a directs FmHA to develop substantive standards by which to judge deferral applications: the FmHA must promulgate regulations on the eligibility criteria of § 1981a.[3]

In *Rowell,* the District Court for the Middle District of Alabama dismissed the borrower's complaint, finding that the deferral relief provided by 7 U.S.C. § 1981a is discretionary and, therefore, the borrower had no right to demand such relief. In *Curry,* 541 F.Supp. 506, a class action, the District Court for the Southern District of Georgia granted on motion for summary judgment the borrowers' requested relief, finding that the FmHA's current regulations were both substantively and procedurally deficient. As to substance, the court found that § 1981a imposes a mandatory duty upon the FmHA to implement eligibility criteria. As to procedure, the court determined that § 1981a requires the FmHA to provide borrowers with personal notice of the availability of deferral relief and an opportunity to be heard. Further-

more, the court found unsatisfactory the content and placement of the notice to be given pursuant to the FmHA's proposed regulations. The borrower in *Rowell* appeals the district court's dismissal of the complaint, urging this court to adopt the *Curry* court's position. The government in *Curry* appeals the court's grant of relief, arguing that the Secretary has in fact satisfactorily implemented a deferral relief program.

## Issues

This appeal requires us to address, first, whether 7 U.S.C. § 1981a imposes a mandatory or discretionary duty on the Secretary of Agriculture to implement a deferral program. If a mandatory duty is imposed, we then must determine what procedures and substantive standards are essential to a properly implemented deferral program under 7 U.S.C. § 1981a. We must then decide whether current FmHA regulations and/or practices implementing the deferral program supply these essential components. If they do not, we must finally determine whether the Secretary must employ the rulemaking procedure of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (1982), to supply these missing elements.

## Discussion

### 1. Mandatory vs. Discretionary

The parties disagree over the meaning of the following language: "the Secretary *may* permit ... the deferral of principal and interest on any outstanding loan ... and *may* forego foreclosure...." 7 U.S.C. § 1981a (emp. added). The government, in its brief and in the court below, made the sweeping argument that the permissive language "may" indicates that Congress made implementation of the program optional and gives the FmHA complete discre-

---

**2.** It should be noted that in *Williams v. Butz,* No. 176–153 (S.D.Ga. Oct. 7, 1977), the FmHA agreed to provide certain rural housing program borrowers with personal notice of the availability of moratorium relief under 42 U.S.C. § 1475. For the import of this agreement, see note 7, *infra.*

**3.** Essentially, the borrowers desire that the FmHA promulgate regulations with respect to CFRDA loans similar to those enacted under the Rural Housing Loan Program, 42 U.S.C. § 1475. *See* 7 C.F.R. § 1951.313 (1984).

tion to decline to implement the deferral program. The borrowers, on the other hand, argue that the program itself is not optional at all and *must* be implemented, but the decision whether to grant a deferral in a particular case is entrusted to the Secretary's sound discretion.

 At oral argument, the government retracted from its extreme position. The government now concedes that § 1981a mandates the FmHA to give borrowers notice of the availability of deferral relief. The government does not concede, however, that other procedural protections, such as an opportunity to be heard, are mandated. Furthermore, the government contends that § 1981a does not require the Secretary to promulgate any substantive criteria to determine borrowers' eligibility for deferral relief.

The government's shift in position at this late stage helps point out the true focus of this appeal.[4] To argue that the statute mandates certain procedural aspects of a deferral relief program but not certain substantive aspects is not to argue that the statute mandates no program at all; rather, the very fact that notice of a program *must* be given[5] demonstrates that some sort of program must exist. In light of the government's concession that the statute requires notice, any other construction of § 1981a would create an illogical statutory scheme in which the FmHA is required to give borrowers notice of a nonexistent program. Such could not be Congress' intent.[6] Congress has created a deferral relief program and the question is not whether, but how, the FmHA is to implement it. Therefore, we now turn to this important question.

**4.** It also demonstrates that it is much easier to argue an extreme position in the peaceful vacuum afforded by an appellate brief than in oral argument before a three-judge panel.

**5.** The nature and frequency of the notice is addressed in Parts 3 and 4, *infra.*

**6.** Courts will not defer to administrative constructions of statutes which create nonsensical

## 2. *Essential Components of the Deferral Relief Program*

 Having determined that § 1981a mandates the FmHA to implement a deferral relief program of some description, we now identify the precise requisites of such a program. We agree with the Eighth Circuit in *Allison v. Block,* 723 F.2d 631 (8th Cir.1983), in holding that proper implementation of a deferral relief program contains both procedural and substantive components. That is, § 1981a "creates a right to have certain uniform procedures established and requires the Secretary to develop substantive standards applicable to deferral applications." *Id.,* 723 F.2d at 634 (footnote omitted). *See also Matzke v. Block,* 732 F.2d 799 (10th Cir.1984).

### a. Procedural Requisites

 As already noted, the government has conceded that notice is mandatory under § 1981a. The district court in *Curry,* however, went beyond the government's concession, and analyzed the procedure question as follows:

> The language of [§ 1981a] expressly provides that the deferral mechanism is triggered "at the *request* of the borrower." Further, no deferral relief will be forthcoming absent "*a showing* by the borrower that due to circumstances beyond the borrower's control the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower." ...
> Logically, the borrower is unable to request the deferral relief and show his eligibility to receive the same unless he has notice of the contents of § 1981a and an opportunity to be heard.

results, *see Scarborough v. Office of Personnel Management,* 723 F.2d 801, 818 (11th Cir.1984), particularly where, as here, the administrative construction "frustrate[s] the policy that Congress sought to implement." *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 37, 102 S.Ct. 38, 44, 70 L.Ed.2d 23 (1981).

541 F.Supp. at 522. Thus, without addressing the borrowers' due process arguments, the *Curry* court concluded that the statute itself embodied the procedural protections of notice *and* an opportunity for a hearing. Similarly, the Eighth Circuit in *Allison* concluded that "the rudimentary elements of adequate notice and an opportunity to be heard are embodied in the language of Section 1981a." 723 F.2d at 634. We agree with the conclusions of the *Curry* and *Allison* courts.[7]

b. Substantive Requisites

■ The district court in *Curry* concluded that proper implementation of the deferral relief program required the FmHA to establish eligibility criteria for § 1981a relief. 541 F.Supp. at 522, 526. Likewise, the *Allison* court determined that "[g]ood faith consideration of the Section 1981a deferral alternative by the Secretary requires the existence of some substantive standards which, if met, entitled the borrower to relief." 723 F.2d at 636. We agree that the deferral relief program would be a mere "empty procedural shell" in the absence of eligibility criteria and, therefore, hold that § 1981a requires the Secretary to develop substantive standards by which to evaluate the merits of individual applications for deferral relief.[8]

3. *Adequacy of the Existing Program*

Having determined that § 1981a mandates the FmHA to implement a deferral relief program and that, as implemented, the program must contain both procedural and substantive components, the pivotal question in this case becomes whether current FmHA regulations and practices satisfy § 1981a's requirements. The government contends that the *Curry* court's decision was erroneous because borrowers already receive adequate procedural protections and their applications are judged fairly, liberally, and even-handedly. We agree with the *Curry* court's conclusion that the FmHA's current practices and regulations do not fulfill the Secretary's obligations under § 1981a.

■ In concluding that the FmHA had not satisfied the procedural requirements of § 1981a, the *Curry* court examined certain proposed FmHA regulations. Under these proposed regulations, borrowers would receive notice of the opportunity to apply for deferral relief during the loan-making process and at the beginning of the production season. Although the *Curry* court concluded that the timing of the notice provided by these proposed regulations was sufficient, the court went on to state that "the FmHA should also notify borrowers of their deferral rights when evaluating and reviewing the farmer's past production year—if it should appear that there is a potential problem." 541 F.Supp. at 524. Because the proposed regulations do not

---

7. *See also Ramey v. Block,* 738 F.2d 756, at 763 (6th Cir.1984) (Jones, J., dissenting in part) (statute requires notice); *United States v. Markgraf,* 736 F.2d 1179, 1187–1188 (7th Cir.1984) (Posner, J., dissenting from denial of rehearing en banc); *but see id.* at 1186 (panel opinion); *Ramey, supra,* at 762 (no notice required).

Although we agree with the conclusion in *Curry,* we do not embrace all of the reasoning of that court. In *Williams v. Butz* (No. 176–153, S.D.Ga., Oct. 7, 1977), the court entered a consent decree in which the FmHA agreed to provide personal written notice to borrowers under the Rural Housing Act, 42 U.S.C. § 1475. The district court concluded that this consent decree supported the conclusion that § 1981a required notice to borrowers because Congress knew that the language it was enacting in § 1981a was similar to that of § 1475 and Congress knew, presumably, about the consent decree in *Butz.*

The district court's reliance on the consent agreement is erroneous. Consent decrees are merely contractual agreements, *Strouse v. J. Kinson Cook, Inc.,* 634 F.2d 883, 885 (5th Cir. 1981), and the Supreme Court has held that they should be construed without reference to the legislation which might have been proved applicable had the case proceeded to litigation. *See United States v. ITT Continental Banking Co.,* 420 U.S. 223, 236–37, 95 S.Ct. 926, 934–35, 43 L.Ed.2d 148 (1975). By the same token, legislation should not be construed by reference to consent decrees. Nevertheless, the district court's analysis of the statutory language is independently sufficient to sustain the conclusion that § 1981a requires notice and an opportunity to be heard.

8. *Accord Markgraf, supra* note 7, at 1185; *Ramey, supra* note 7, at 1561.

provide for post-production year notice, the *Curry* court effectively found that the timing of the notice provided for by the proposed regulations was deficient. To the extent that the *Curry* court determined that notice at the beginning of the production season and during the loan-making process is, by itself, insufficient, we agree with the court's determination. In our view, borrowers should be advised of their rights to seek deferral relief not only at the beginning of the production season and during the loan-making process, but also when any delinquency notice is mailed and again when they are given any acceleration notice. *Cf.* 7 C.F.R. § 1951.313(b) (1984).[9]

■ The *Curry* court also found that the proposed regulations were "fatally deficient" in that the documents which would notify borrowers of the availability of deferral relief contained serious shortcomings. First, the court concluded that the content of the notice was deficient in that the definition of deferral was inaccurate and the notice did not provide any guidelines to the borrower so that he might submit an application in proper form. Secondly, as to the location of the notice, the court found that the notice of availability of deferral relief was buried in a section containing threatening language concerning deficiencies and borrower responsibilities and, therefore, would discourage borrowers from applying for such relief. We agree with the *Curry* court's analysis of the content and placement of the regulations.

9. At oral argument, the government contended that the Fourth Circuit in *United States v. Hamrick*, 713 F.2d 69 (4th Cir.1983), endorsed the regulations discussed in *Curry* as an adequate implementation of § 1981a's procedural requisites. We do not agree with the government's reading of *Hamrick*. In that case, the adequacy of the new regulations was not challenged, and the court did not consider whether they fulfilled the Secretary's duty under § 1981a. Rather, the court's very narrow focus was on the nature of the regulations: the court concluded that the regulations were procedural and, therefore, should be applied retroactively. *Id.* at 71 n. 3. Thus, contrary to the government's suggestion,

■ As to the second aspect of the procedural requisites of § 1981a, an opportunity to be heard, the proposed regulations are patently inadequate in that they fail to provide any uniform procedure whereby a borrower could make the requisite prima facie showing to demonstrate his need for deferral relief. In this regard, the government's suggestion that the opportunity to be heard requirement is satisfied by the FmHA's county supervisors' ad hoc consideration of each problem case that comes to their attention is meritless. Such informal consideration does not satisfy § 1981a's inherent requirement of uniform procedures to insure equal treatment and adequate consideration of all deferral relief applications. *See Allison, supra,* 723 F.2d at 636.

■ Finally, as to the substantive requisites of the statute, the *Curry* court concluded that the Secretary must "promulgate regulations on the eligibility criteria of § 1981a comparable to those presently in use pursuant to the moratorium provision of the Rural Housing Loan Program, 42 U.S.C. § 1475." 541 F.Supp. at 526. Although the § 1981a eligibility criteria need not parrot those found in the § 1475 regulations, we agree with the *Curry* court that the Rural Housing regulations should provide some guidance to the Secretary in fashioning eligibility criteria under the CFRDA. We do not agree however, with the borrowers' contention that the only relevant eligibility criteria are those made explicit in the statute and that deferral relief should be forthcoming automatically upon the fulfillment of the statutory criteria. The borrowers contend that

no split in authority exists between circuits which have rejected, and circuits which have endorsed, the regulations. Indeed, both circuits which have squarely confronted the issue have essentially agreed with the *Curry* conclusion that existing regulations are procedurally inadequate. *See Matzke, supra,* at 801; *Allison, supra.* The Seventh Circuit, in concluding that the regulations were promulgated pursuant to 7 U.S.C. § 1981(d) and therefore "do not require notice of relief available under section 1981a," addressed only the relevancy, not the adequacy, of the regulations. *See Markgraf, supra* note 7, at 1186.

the only criteria the statute permits the FmHA to establish are two conditions: (1) circumstances must be beyond the borrower's control and (2) the borrower must be unable to continue making payments without unduly impairing his standard of living. (Br. at 27). In practice, however, the government has been conditioning the grant of deferrals not merely on the applicant's need, but also on the borrower's potential ability to repay the loan. *Id.* at 28. Essentially, the borrowers contend that the FmHA should promulgate regulations articulating the exact standard contained in § 1981a, and if a borrower satisfies those criteria, a deferral must be granted. We disagree. First, § 1981a indicates that the Secretary may grant a deferral and may forego foreclosure if, *inter alia,* "the borrower is *temporarily* unable to continue making payments...." 7 U.S.C. § 1981a (emphasis supplied). The government points out that a borrower's inability to make payments is not "temporary" if there is no reasonable prospect of ultimate repayment of the loan. (Reply Br. at 17). Thus, if the statutory standard is *"temporary"* inability to repay, then it would seem that an inquiry into the borrower's ultimate ability to repay is necessary, even though the statute does not explicitly make "ability to repay" a criterion. Second, the statute clearly states that even when the two explicit statutory criteria are satisfied, the Secretary *may* grant relief. Thus, the borrowers' argument that the only eligibility criteria the Secretary can adopt are those which are explicit in the statute and that relief must be given upon satisfaction of only those criteria is not supported by the statute.

### 4. *Method of Implementation*

Thus far, the circuits have split over the method by which the Secretary shall establish a deferral relief program. The Eighth Circuit has concluded, at least with respect to substantive eligibility criteria, that, although formal rulemaking would be preferable, the Secretary may utilize adjudicative processes;[10] on the other hand, the Tenth Circuit has concluded that the Secretary must employ rulemaking procedure.[11] We agree with the Tenth Circuit that the urgent need Congress perceived for deferral relief to farmers and the national scope of the problems presented in this litigation render "it ... a bit late to begin the accumulation of decisional guides." *Matzke, supra,* at 802. The *Matzke* court relied on *Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), in which the Supreme Court stated that

> The power of an administrative agency to administer a Congressionally created and funded program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.... No matter how rational or consistent with Congressional intent a particular decision might be, the determination of eligibility cannot be made on an *ad hoc* basis by the dispenser of the funds.

> The Administrative Procedure Act was adopted to provide, *inter alia,* that administrative policies affecting individual rights and obligations be promulgated pursuant to certain stated procedures so as to avoid the inherently arbitrary nature of unpublished *ad hoc* determinations.

415 U.S. at 231, 232; 94 S.Ct. at 1072, 1073, 39 L.Ed.2d 270. Although *Morton v. Ruiz* may overstate an administrative agency's obligation to exercise its rulemaking authority,[12] we find that under the circum-

---

**10.** *Allison, supra,* 723 F.2d at 638. *See also Ramey, supra* note 7, at 1561; *Markgraf, supra* note 7, at 1186.

**11.** *See Matzke, et al. v. Block, supra,* at 802.

**12.** *See* 3 K. Davis, *Administrative Law Treatise* § 14.5 at 28 (1980) ("Those statements [in *Morton v. Ruiz*] express a sound long-term goal, toward which courts and agencies should strive, but the statements clearly are not the present law; under [*NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974)] and other cases, law may still be made through adjudication, even when rulemaking is a superior process").

stances of this case, in which many farmers across the nation are in dire need of the relief Congress intended to be made available to them, the Secretary's implementation of this program through adjudication would be an abuse of discretion. *Matzke, supra,* at 802. In any event, even if neither *Morton v. Ruiz* nor the exigencies of this case required rulemaking, this court has previously held that the Secretary is bound by his July 24, 1971 pronouncement[13] making the procedural requirements of Section 4 of the Administrative Procedure Act, 5 U.S.C. § 553, applicable to matters relating to "loans," and, therefore, the Secretary is so bound in the instant case. *See Arlington Oil Mills, Inc. v. Knebel,* 543 F.2d 1092, 1095 n. 6 (5th Cir. 1976). *See also South Carolina v. Block,* 558 F.Supp. 1004, 1112–13 (D.S.C.1983), and cases cited therein.

### Conclusion

The decision in *Rowell v. Secretary of Agriculture, et al.,* (11 Cir.1984), No. 83–7147, is REVERSED and REMANDED for proceedings consistent with this opinion; the decision in *Curry v. Block* (11 Cir. 1984), No. 82–8544 is AFFIRMED.