Inez CURRY, et al., Plaintiffs,

v.

John BLOCK, et al., Defendants.

Civ. A. No. 281–037.

United States District Court,
S.D. Georgia,
Brunswick Division.

May 6, 1985.

---

Martha Miller, Atlanta, Ga., Holle Weiss-Friedman, Brunswick, Ga., for plaintiffs.

Melissa Mundell, Asst. U.S. Atty., Savannah, Ga., for defendants.

## ORDER

ALAIMO, Chief Judge.

By Order dated June 11, 1982, this Court granted plaintiffs' motion for summary judgment. That judgment was affirmed by the United States Court of Appeals for the Eleventh Circuit. Currently before the Court is plaintiffs' motion for assessment of approximately $55,460 in attorney fees against the United States. After a thorough and painstaking consideration of the record and of the briefs and oral argument presented on this motion, the Court con-

cludes that plaintiffs should be awarded attorney fees pursuant to the fee provisions of 28 U.S.C. § 2412(b) and (d).

**FACTUAL BACKGROUND**

Plaintiffs initiated this class action on behalf of all Georgians in default on Farmer's Home Administration ("FmHA") loans financed under the Consolidated Farm and Rural Development Act ("the Act"). A 1978 amendment to the Act had set out certain procedures to be used for granting deferrals for FmHA loans. 7 U.S.C. § 1981a (1982). The complaint requested this Court to order the United States Department of Agriculture to implement the deferral procedure described in the amendment. The Court concluded that § 1981a mandated establishment of the requested deferral mechanism. Consequently, summary judgment was entered for plaintiffs. *See Curry v. Block*, 541 F.Supp. 506 (S.D. Ga.1982), *aff'd*, 738 F.2d 1556 (11th Cir. 1984).

Plaintiffs now request that attorney fees incurred by them, from the initiation of the action to date, be assessed against the United States. Plaintiffs assert a two-fold basis for their fee application. First, they request fees under 28 U.S.C. § 2412(b). This subsection invests district courts with discretion to award fees against the Federal Government to the extent that common law or statute would permit a fee award against any other party. Alternatively, plaintiffs assert that a mandatory fee is authorized under 28 U.S.C. § 2412(d) because the Government's position in this litigation was not substantially justified.[1]

**DISCUSSION**

**A. Fee Award Under 28 U.S.C. § 2412(b)**

It has become axiomatic that, under the "American Rule," parties in this Nation's courts pay their own attorney fees. *See Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Embracing this rule, 28 U.S.C. § 2412 formerly immunized the Federal

Government from judgments for attorney fees. *See* 28 U.S.C. § 2412 (1976) (amended 1980).

Enforcement of former § 2412 created an onerous economic burden for citizens seeking to challenge governmental actions. In an effort to reduce the economic deterrents to litigation, Congress in 1980 passed the Equal Access to Justice Act ("EAJA"). *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 6 (hereinafter cited as "House Report"), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984 (stating purpose of EAJA). This legislation amended § 2412 by adding subsection (b), which reads:

(b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b) (1982). Under § 2412(b), a litigant may invoke the common law exceptions to the American Rule and seek fees where the United States litigates in bad faith or where litigation produces a common benefit. *See* House Report, *supra*, 1980 U.S.Code Cong. & Ad. News 4987. As well, the Government may be charged with fees pursuant to statutory fee-shifting provisions applicable to other parties.

Plaintiffs, taking the latter approach, assert that the attorney fee provision of the Civil Rights Act of 1976, 42 U.S.C. § 1988,

---

1. The fee provision of 28 U.S.C. § 2412(d) expired automatically on October 1, 1984, but continues to apply "through final disposition of any

action commenced before the date of repeal." Pub.L. 96–481, Section 240(c).

provides a statutory basis for a fee award in this case.[2] Section 1988 provides that:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988 (1982). Section 1983 provides a remedy for any action taken under color of state law which subjects a person within the jurisdiction of the United States to the deprivation of a federal constitutional or statutory right. 42 U.S.C. § 1983 (1982). The case at bar is analogous to one brought under § 1983, differing only in that the deprivation of rights resulted not from state action but from the action of federal officials. *See Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (creating common law remedy for violations of federal constitutional rights by officers acting under color of federal law) (hereinafter termed *"Bivens*-type action"). Liability under § 1983 could have resulted had a state officer worked a violation of federal right analogous to that perpetrated by the Federal Government in the case at bar. *See Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

As plaintiffs explain it, if a § 1983 plaintiff were successfully to challenge a violation of federal rights by state officials, attorney fees would be available against the state under § 1988. Section 2412(b) permits fees to be assessed against the United States to the same extent that any statute would permit assessment of fees against a non-federal party. Since § 1988 would authorize a fee award against a state official sued for violating federal statutory rights, plaintiffs submit that § 2412(b) permits assessment of fees where the Federal Government violates federal statutory rights. *See Trujillo v.*

*Heckler*, 587 F.Supp. 928 (D.Colo.1984); *Lauritzen v. Lehman*, 736 F.2d 550, 560–66 (9th Cir.1984) (Boochever, J., dissenting); *Premachandra v. Mitts*, 753 F.2d 635, 642–44 (8th Cir.1985) (en banc) (Floyd Gibson and Heaney, JJ., dissenting).

The Government urges the Court to reject plaintiffs' analysis of §§ 1988 and 2412(b) in favor of a more limiting statutory construction.[3] The Government focuses on the scope of § 1988 and urges that this statute simply does not provide fees for litigants challenging violations of federal rights by federal officials. Had the Congress which passed § 1988 intended this result, the Government supposes that the statute would have included the language underlined below:

> [The Court may allow to the prevailing party a reasonable attorney's fee] in any action ... to enforce a provision of section 1981, 1982, 1983, 1985, and 1986 of this title, <u>or in any action to enforce any right against the United States analogous to the rights protected by the foregoing sections.</u>

The Government contends that the actual language of § 1988 does not permit such a gloss upon the statute. The majority of courts which have addressed the application of § 2412(b) to *Bivens*-type cases have adopted the construction of §§ 1988 and 2412(b) which the Government here espouses. *See Lauritzen v. Lehman, supra; Premachandra v. Mitts, supra; Saxner v. Benson*, 727 F.2d 669 (7th Cir.1984); *Unification Church v. INS*, 574 F.Supp. 93 (D.D.C.1983).

■ The Government, by relying too heavily on the language of the referenced statute, § 1988, misses the import of § 2412(b). Having considered the language and the legislative history of the EAJA, the Court is persuaded that

---

**2.** Plaintiffs' first supplemental brief in support of this motion asserts as well that fees are appropriate because plaintiffs' success created a "common benefit." This argument is rejected for the reasons set out in *Trujillo v. Heckler*, 587 F.Supp. 928, 930–31 (D.Colo.1984).

**3.** The Government concedes, as it must, that plaintiffs substantially prevailed in this action. Thus, the sole point of contention between the parties is the availability of § 2412(b) attorney fees to plaintiffs in a *Bivens*-type action against the Federal Government.

§ 2412(b) provides for attorney fees in the case at bar.

Turning first to the language of the EAJA, § 2412(b) provides for fee awards against the United States "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." State officials are among the possible "other parties" to actions for violations of federal statutory rights. As plaintiffs would be able to recover fees pursuant to § 1988 against a state defendant, the United States should be liable "to the same extent" under the language of § 2412(b).

The legislative history of the EAJA supports a construction of the Act which provides for fees in *Bivens*-type cases. The House Report to the Act reflects Congress' general concern with the economic burden which citizens must bear in challenging the wrongs of the Federal Government. *See* House Report, *supra*, 1980 U.S.Code Cong. & Ad.News at 4984. The testimony of Armend Derfner, of the Lawyer's Committee for Civil Rights Under the Law, reveals the legislators' particular awareness of the need for fee awards in *Bivens*-type cases against the Federal Government.

Early in the evolution of the EAJA, it proposed to hold the Federal Government amenable to fee awards "to the same extent as would be any *private* litigant." Derfner took issue with this language:

> Mr. Kastenmeier, if I could just direct myself to one portion of this bill?
>
> There is an area in which a slight drafting modification could carry out what I believe might be the intention of the committee; and that is to put the United States completely on a par as far as the enforcement of important constitutional and statutory rights.
>
> In the Civil Rights Act of 1976 you provided that when someone ... sues a State or local government under 42 United States Code, section 1983, to vindicate a constitutional or Federal statutory right, that fees would be available under the *Newman v. Peggy* [*Piggie*] [*sic*]

*Park* standard. [The proposed amendment to § 2412 says] ... that the United States should pay fees ... in those circumstances where the court may award fees in suits involving private parties.

> That doesn't say State or local government, but if the language were amended to read, "in those circumstances where the court may award such fees in suits involving other litigants"; it would achieve that purpose. And I think it would go even further toward putting the United States on a par with other governmental bodies.

Award of Attorneys' Fees Against the Federal Government: Hearings on S.B. 265 Before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Judiciary Committee, 96th Cong., 2d Sess., at 100, *quoted in Premachandra v. Mitts*, 727 F.2d 717, 728 (8th Cir.1984) (panel opinion, vacated upon decision to rehear case en banc). Derfner advocated extension of § 2412(b) to provide for fees in *Bivens*-type cases. The statute's language was changed as Derfner suggested prior to the statute's enactment. The Court can only assume that, by changing the language exactly as Derfner recommended, the Congress intended the effect which Derfner described.

The Ninth Circuit in *Lauritzen v. Lehman, supra*, followed what it had concluded was the statutes' clear meanings and held that fees are not available under §§ 2412(b) and 1988 in *Bivens*-type cases. The *Lauritzen* court refused to give Derfner's testimony dispositive weight, stating: "The farther we wander from the statutory language to pick up bits and scraps of legislative history to aid interpretation, the more likely will our interpretations be capricious and unpredictable." 736 F.2d at 555.

The "plain language" of § 2412(b) does not point inexorably to the result reached by the *Lauritzen* court. As to the importance of the committee testimony in determining the statute's meaning, this Court is more persuaded by Judge Boochever's comments in dissent in *Lauritzen*:

Testimony before a congressional committee sometimes is of dispositive weight in interpreting congressional intent where the testifying witness is closely identified with the legislation ... In the instant case, ... the sequence of events ... provides a nexus between the intent of Congress and that of the witness. Congress, without stating any other reason for the change, amended S. 265 in precisely the fashion Derfner suggested. Far from being a bit or scrap of legislative history as the majority implies, Derfner's testimony is the only reason in the legislative record for the amendment. The majority fails to explain the remarkable coincidence in the timing of Derfner's suggestion and the amendment. The only plausible explanation is that Congress adopted the amendment for the reason Derfner suggested.

736 F.2d 561–62 (Boochever, J., dissenting) (citations omitted).

The language of § 2412(b) permits a statutory construction under which fees would be available in the current case. Allowing fees in this case advances the broad purposes of the Equal Access to Justice Act. Individual litigants such as the Currys are ill-able to shoulder the cost of litigation and appeal against the Federal Government, nor should such sacrifice be expected of them. "[T]he expense of correcting error on the part of the Government should not rest wholly on the party whose willingness to litigate ... has helped to define the limits of Federal authority." House Report, *supra*, 1980 U.S.Code Cong. & Ad. News at 4989. The Court does not believe that Congress intended to minimize the importance of the *Bivens*-type suit in defining public policy by exempting litigants such as the Currys from the fee provision of § 2412(b).

■ Having concluded that plaintiffs are eligible for a fee award under § 2412(b), the Court must decide whether a fee is justified under the facts of this case. *See* 28 U.S.C. § 2412(b) (making award of fees under § 2412(b) discretionary). A court's discretion in making a § 2412(b) award pursuant to a statutory fee provision is to be guided by the same standard which governs awards against other parties. House Report, *supra*, 1980 U.S.Code Cong. & Ad. News at 4996. The standard for fee awards under 42 U.S.C. § 1988, therefore, applies to this case. Under this standard, a prevailing plaintiff ordinarily recovers fees unless special circumstances would render such an award unjust. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40, 48 (1983). The Government has asserted no factual circumstances which militate against awarding fees to plaintiffs. Neither does the Court perceive any reason to deny plaintiffs' § 2412(b) fee application. The Court shall, thus, grant plaintiffs' request for fees under 28 U.S.C. § 2412(b).

## B. Fee Award Under 28 U.S.C. § 2412(d)

Plaintiffs submit that fees are also available under 28 U.S.C. § 2412(d) because the Government's position in this litigation was not substantially justified. The Court agrees with this characterization of the Government's case and shall, alternatively, base its fee award on § 2412(d).

Before addressing the substantial-justification issue, the Court must consider the timeliness of plaintiffs' application under § 2412(d).

### 1. Timeliness Under § 2412(d)(1)(B)

The factual setting relevant to this issue is straightforward. This Court entered its Order granting plaintiffs' motion for summary judgment on June 11, 1982. The Eleventh Circuit's affirmance was docketed on August 15, 1984. Plaintiffs submitted their application for fees under § 2412(b) and (d) on September 10, 1984. The Government challenges the timeliness of the motion.

Subsection 2412(d)(1)(B) provides that "[a] party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees." 28 U.S.C. § 2412(d)(1)(B) (1982). The Government as-

serts that "final judgment" in this provision refers to the final, appealable disposition of the case by the trial court, rather than to disposition of the case on appeal. *See* Fed.R.Civ.P. 54(a) (defining "judgment"). Under this reading of the statute, the Court would be compelled to deny plaintiffs' fee application under § 2412(d) for untimeliness.

Neither the statutory language nor the legislative history of § 2412(d) indicate the meaning which Congress intended for "final judgment." Left without congressional guidance, courts have interpreted the timeliness provision variously. The majority of courts have held that fee applications under § 2412(d) are timely if filed within 30 days of the conclusion of final appeal. *See McDonald v. Schweiker,* 726 F.2d 311 (7th Cir.1983); *Massachusetts Union of Public Housing Tenants, Inc. v. Pierce,* 755 F.2d 177 (D.C.Cir.1985); *Taylor v. United States,* 749 F.2d 171 (3d Cir.1984); *Knights of the Ku Klux Klan v. East Baton Rouge Parish School Board,* 679 F.2d 64 (5th Cir.1982); *Cox v. United States,* 593 F.Supp. 1238 (S.D.Fla.1984); *Rawlins v. United States,* 686 F.2d 903, 914, 210 Ct.Cl. 672, 231 Ct.Cl. 313 (1982). The Ninth and Fourth Circuits, applying Fed.R.Civ.P. 54(a)'s definition of "judgment," have stated that "final judgment" in § 2412(d) refers to the final, appealable decision of the trial court. *See McQuiston v. Marsh,* 707 F.2d 1082, 1085 (9th Cir.1983); *Guthrie v. Schweiker,* 718 F.2d 104, 106 (4th Cir.1983) (*dicta*). The Eleventh Circuit has not directly addressed this issue. *But see Gold Kist, Inc. v. United States Dept. of Agriculture,* 741 F.2d 344, 349 (11th Cir.1984) (*dicta*)(expressing agreement with statutory interpretation adopted in *McQuiston* and *Guthrie*).

▮ The Court is persuaded that the "final judgment" which begins the time for filing a § 2412(d) fee application is the final, nonappealable judgment. Judge Posner's opinion for the Seventh Circuit panel

in *McDonald v. Schweiker* well explains the superior practicality of this statutory construction. 726 F.2d at 313–16. It is revealing that, in a revised version of § 2412(d) which recently passed Congress, an added definitional section reads: " 'final judgment' means a judgment that is final and not appealable." *Taylor v. United States, supra* at 174. President Reagan declined to sign the reenacted version of § 2412(d) into law. However, the definition included in the vetoed legislation provides a clear indication of Congress' intent. *Id.*

For purposes of § 2412(d)(1)(B), the "final judgment" in this case was entered on August 15, 1984, when the Eleventh Circuit affirmed this Court's dispositive Order.[4] Plaintiffs filed their application for fees under § 2412(d) within thirty days of the circuit court's judgment; thus, the application was timely under § 2412(d)(1)(B).

**2. Government's Position Substantially Justified?**

Like § 2412(b), the fee provision of § 2412(d) was added to § 2412 as part of the EAJA. The standard applicable to fee awards under § 2412(d) is set out in the subsection's initial paragraph:

> **(d)(1)(A)** Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (1982). To resist a prevailing party's application for attorney fees under § 2412(d), the Government must show that the position which it took in the

---

**4.** The Court assumes, without deciding, that "final judgment" came with entry of the appellate decision, rather than with entry of the mandate or with passage of the time to appeal to the United States Supreme Court.

litigation had substantial justification. *Ashburn v. United States*, 740 F.2d 843, 849 (11th Cir.1984) (holding that the "position" referred to in § 2412(d) is the Government's litigation position, rather than the position taken by the agency in the underlying action which prompted litigation).

■ As the language of § 2412(d) indicates, the Government bears the burden of showing that its litigation position was substantially justified. *Id.* at 850, *citing* House Report, *supra*, 1980 U.S.Code Cong. & Ad.News at 4989. The standard which the Government must meet is essentially one of reasonableness. *Id.*[5] The fact that the Government's arguments were unsuccessful does not raise a presumption that its position was not substantially justified. *Id.* Nor is the Government required to establish that its decision to litigate was based on a substantial probability of prevailing. *Id.* Rather, to satisfy its burden under § 2412(d), the Government must show that it had a solid, if not correct, basis in fact and law for the litigation position which it adopted. *McDonald v. Schweiker, supra* at 316.

■ The Currys' eligibility for fees under § 2412(d), thus, turns on the reasonableness of the litigation position taken by the Government. First, it is necessary to review the arguments which the Government pressed in this case. The complaint alleged that the United States Department of Agriculture had violated the mandate of 7 U.S.C. § 1981a by having failed to implement the statute's deferral procedure for FmHA loans. The plaintiffs requested injunctive relief in the form of: (1) an order that the FmHA give borrowers personal notice of the rights under § 1981a to apply for deferral relief; and, (2) an order requiring the FmHA to promulgate regulations setting out the criteria for eligibility for deferral relief.

The Government's primary argument before this Court was that § 1981a *required* nothing and conferred no rights upon borrowers, but merely gave the Department the option of instituting the section's loan deferral mechanism.[6] The Government asserted that the statute's directive that "the Secretary may permit ... the deferral of principal and interest" and "may forego foreclosure" unambiguously revealed that Congress intended to impose no duty on the Department. Section 1981a's "permissive" language, it was argued, left implementation of the section to the Department's discretion.

This Court's Order granting summary judgment for the plaintiffs explained the deficiencies in the Government's position. First, the Government relied on the too "sweeping" assertion that Congress expressed with the single word "may" an intention that the Department's authority under § 1981a be purely discretionary. *See Curry v. Block*, 738 F.2d at 1559 (appellate court's characterization of this argument as "sweeping" and "extreme"). The statutory context and legislative history of § 1981a strongly belies the Government's "literal" interpretation of the statute. *Curry v. Block*, 541 F.Supp. at 521. The statute's legislative history revealed that Congress in 1977 was dissatisfied with the FmHA's position on loan deferral. *Id.* at 521, 518–19. Section 1981a, enacted in 1978, was intended to *assure* that a deferral mechanism would be available for FmHA borrowers similar to the moratori-

---

**5.** *But see Spencer v. N.L.R.B.*, 712 F.2d 539, 558 (D.C.Cir.1983) (noting that Senate Judiciary Committee rejected amendment to the EAJA which would have changed the pertinent language from "substantially justified" to "reasonably justified." This suggested to the *Spencer* court that the test should be "slightly more stringent than 'one of reasonableness.'").

**6.** The Government alternatively argued that, even if § 1981a were mandatory, the deferral procedures already in place satisfied the stat-

ute's mandate. Defendant's Brief in Opposition to Plaintiffs' Motion for a Summary Judgment and in Support of Defendant's Motion for Summary Judgment, at pp. 57–65. This argument occupied 8 pages of defendant's 65-page brief to this Court. The remainder of the brief was dedicated to what the Court now characterizes as the defendant's primary argument. *See* Defendant's Brief, at p. 3 ("It is the defendant's position that § 1981a is not mandatory.").

um provision of the Farm Housing Act, 42 U.S.C. § 1475. *Id.* at 516–18.

To accept the statutory interpretation advocated by the Government, one had to conclude that Congress passed a measure intended to change FmHA policy, yet left implementation of the ameliorative measure to the unchecked discretion of the FmHA itself. Refusing to ascribe such perverse conduct to the Congress, this Court rejected the Government's contention that the Department's implementation of § 1981a was purely optional.

Despite its failure to have carried the day, the Government insists that its litigation position was substantially justified. The Government stresses that the nature of the Department's responsibility was a question of first impression when this Court decided *Curry v. Block.* This is true. Without judicial interpretation of the statute, the legislative history and statutory language were the only law upon which the Government could draw in formulating its argument before this Court. *See Donovan v. Dillingham,* 668 F.2d 1196, 1198–99 (11th Cir.1982), *rev'd on other grounds,* 688 F.2d 1367 (11th Cir.1982) (in determining whether a litigation position was justified, the court must consider the state of the law at the time the position was taken). These sources, the statute's language and history, pointed to only one reasonable statutory interpretation—one which made mandatory the Department's obligation to institute § 1981a deferral procedures for FmHA loans. The novelty of the § 1981a issue did not entitle the Government to advocate an alternative, and unreasonable, interpretation of the statute.

The statutory interpretation urged by the Government in this case lacked substantial justification from its inception. The Government's decision to appeal this Court's decision, further, was characteristic of the Government's obstinance throughout this litigation. During the pendency of the *Curry* appeal, district courts throughout the country were criticizing the Government's contention that implementation of § 1981a was discretionary. *See, e.g.,*

*Matzke v. Block,* 564 F.Supp. 1157 (D.Kan. 1983); *Jacoby v. Schuman,* 568 F.Supp. 843 (E.D.Mo.1983); *Allison v. Block,* 556 F.Supp. 400 (W.D.Mo.1982); *but see Neighbors v. Block,* 564 F.Supp. 1075 (E.D.Ark. 1983). During oral argument of the current case before a three-judge panel of the Eleventh Circuit, the Government conceded that implementation of § 1981a was not wholly optional, thus abandoning what had been its primary argument before this Court. The concession was well-advised; circuit courts which have construed § 1981a have uniformly rejected the statutory interpretation which the Government argued before this Court. *See Shick v. FmHA,* 748 F.2d 35, 41 (1st Cir.1984) (by implication); *United States v. Hamrick,* 713 F.2d 69, 70 (4th Cir.1983) (by implication); *United States v. Markgraf,* 736 F.2d 1179, 1182–84 (7th Cir.1984); *Allison v. Block,* 723 F.2d 631, 633–34 (8th Cir.1983); *Matzke v. Block,* 732 F.2d 799, 801–02 (10th Cir.1984); *Ramey v. Block,* 738 F.2d 756, 758–62 (6th Cir.1984).

This abundance of judicial criticism was not available when the Government was formulating its litigation position in this case. However, an objective consideration of § 1981a's language and legislative history should have revealed to the Government the weakness of the argument which it pressed in this Court. For this reason, this Court holds that the Government's primary litigation position in this case—that implementation of § 1981a was discretionary—was *never* substantially justified. There exist no special circumstances which make an award of fees against the Government unjust. Accordingly, the Court shall grant plaintiffs' motion for attorney fees under 28 U.S.C. § 2412(d).

### C. Amount of Plaintiffs' Fee Award

■ Plaintiffs request recoupment of all attorney fees and costs attendant to their prosecution of this suit. They further assert that fee enhancement is appropriate in this case and request the Court to award double the actual litigation expenses. The Court shall deny the invitation to award an

enhanced fee. *See Blum v. Stenson, —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).* The Court's award shall fully compensate plaintiffs' attorney fees and costs.

In determining the size of plaintiffs' fee award, the Court is guided by cases construing the fee provision of 42 U.S.C. § 1988. These cases establish that a presumptively reasonable attorney fee results from multiplication of the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939, *supra,* 76 L.Ed.2d at 50. The reasonableness of the hours and rate submitted by a prevailing party are tested by application of certain of the factors set out in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974). Having considered the relevant *Johnson* factors, the Court shall base its fee calculation on the full number of hours and hourly rate submitted by plaintiffs.

Plaintiffs' attorneys have submitted affidavits showing their investment of 616.25 billable hours in the prosecution of this case. During a hearing on the motion for a fee award, the Government stipulated to the reasonableness of plaintiffs' attorneys' hours. Accordingly, the Court shall forego a detailed application of the *Johnson* factors to the hours charged. The affidavits reveal no nonbillable duplication of effort by plaintiffs' attorneys and no nonchargeable hours. In adopting the plaintiffs' hours as a basis for its fee calculation, the Court considers that this was a case of first impression and, as such, presented a singular research burden for plaintiffs' counsel. *See Johnson, supra* at 718 (novelty of legal issue is relevant to fee award). The Court as well recognizes the additional time required of plaintiffs' attorneys to litigate this case on appeal.

Plaintiffs request that these hours be charged at a rate of $90. The Government, again, stipulated to the reasonableness of this hourly rate. The Court finds that this rate approximates the prevailing market rate in this geographic area for legal service of the quality rendered in this case. The rate of $90 per hour shall, thus, be used to calculate the fee award to plaintiffs.[7]

Charging 616.25 hours at a rate of $90 per hour produces a total fee award of $55,462.50. Plaintiffs urge the Court to enhance this "lodestar" amount by applying to it a multiplier of two. District courts have limited discretion to adjust the presumptively reasonable "lodestar" amount upward or downward to arrive at a just fee award. *Blum v. Stenson, supra,* —— U.S. at ——, 104 S.Ct. at 1548, 79 L.Ed.2d at 901. However, the Supreme Court's decisions in *Blum* and *Hensley v. Eckerhart* indicate that a proper application of the twelve *Johnson* factors should rarely result in enhancement of the rate-times-hours amount.

The Court concludes that the following factors offered in support of the request for an enhanced fee in this case will be fully reflected in an award of the "lodestar" amount:

(1) Experience: Plaintiffs' attorneys' ample hourly fee reflects their expertise in cases involving federal lending programs. *See* n. 7, *supra* at p. 1416.

(2) Success of litigation: Because of plaintiffs' complete success in this case, the Court shall award the full amount of plaintiffs' actual attorney expenses. *Hensley, supra,* 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 52 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."). Plaintiffs' victory justifies no fee enhancement, as there has

---

**7.** In that this fee award is based in the alternative on 28 U.S.C. § 2412(d), the Court has considered § 2412(d)(2)(A)'s directive that "attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor

... justifies a higher fee." The Court concludes that the expertise of plaintiffs' counsel, the excellent results achieved by them and the delay in receipt of their fee justifies an upward adjustment of the statutory fee amount from $75 per hour to $90 per hour.

been no showing that their success was greater than one could have reasonably expected in light of the fee charged. *See Blum, supra,* —— U.S. at ——, 104 S.Ct. at 1549, 79 L.Ed.2d at 902.

(3) Risk of nonpayment: Plaintiffs' recovery of attorney fees was contingent upon their prevailing and upon this Court's application of the EAJA. Precedent in this circuit has established that a contingency fee arrangement may justify an increase in an award of attorney fees. *Jones v. Central Soya Co.,* 748 F.2d 586, 591 (11th Cir.1984). Plaintiffs' counsel failed to show that they entered into a classic contingency arrangement, whereby they agreed to forego any compensation if they did not prevail. *See Id.* at 592–93; *Blum v. Stenson, supra* (reserving judgment on whether risk of being denied a fee award can ever justify fee enhancement). The record before the Court does not indicate that plaintiffs' attorneys were prevented from covering possible losses by accepting other cases while pursuing plaintiffs' cause. The hourly rate to be paid plaintiffs' attorneys will sufficiently reward their willingness to accept the case.

In summary, the Court has considered the *Johnson* factors, with particular concentration upon those discussed above, and has concluded that fee enhancement is inappropriate in this case.

## CONCLUSION

Plaintiffs' motion for attorney fees is GRANTED pursuant to the fee provisions of 28 U.S.C. §§ 2412(b) and 2412(d). Defendant is ORDERED to pay fees in the amount of $55,462.50, plus any attorney fees which plaintiffs may prove for the period since October 24, 1984. The Government is, in addition, ORDERED to reimburse plaintiffs' costs consistent with 28 U.S.C. § 2412(a), exclusive of any costs previously awarded plaintiffs by the Eleventh Circuit Court of Appeals. The Clerk of Court is directed to enter an appropriate judgment.